**Humberto SANCHEZ–RENGIFO,
Appellant,**

v.

**UNITED STATES, Appellee.**

Nos. 98–CF–995, 01–CO–580.

District of Columbia Court of Appeals.

Argued June 26, 2002.
Decided Sept. 12, 2002.

Kelli S. Irvine, Public Defender Service, with whom James Klein, Public Defender Service and Jaclyn S. Frankfurt, Public Defender Service, were on the brief, for appellant.

Dorann E. Banks, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Mary Patrice Brown, and Vincent W. Caputy, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and TERRY and WASHINGTON, Associate Judges.

WAGNER, Chief Judge.

Following a jury trial, appellant, Humberto Sanchez–Rengifo, was convicted of the following offenses: (1) first-degree burglary while armed (D.C.Code §§ 22–1801(a), –3202 (1981)); (2) threats to injure a person (D.C.Code § 22–2307 (1981)); (3) second-degree child sexual abuse while armed (D.C.Code §§ 22–4109, –4120(a)(6), –3202 (1981)); and (4) three counts of first-degree child sexual abuse while armed (D.C.Code §§ 22–4108, –3202 (1981)).[1] The court sentenced appellant to

---

**1.** Some of these statutory provisions have been recodified as follows:

D.C.Code §§ 22–1801(a), –3202 are now respectively D.C.Code §§ 22–801, –4502 (2001);

D.C.Code § 22–2307 is now D.C.Code § 22–1810 (2001);

D.C.Code §§ 22–4109, –4120(a)(6) are respectively D.C.Code §§ 22–3009, –3020 (2001); and

six concurrent terms of imprisonment as follows: life without parole for each count of first-degree child sexual abuse while armed; fifteen years to life for second-degree child sexual abuse while armed; fifteen years to life for first-degree burglary while armed; and six years and eight months to twenty years for threats to injure a person. On appeal, he argues that the Double Jeopardy Clause of the Constitution bars separate convictions for the three counts of first-degree child sexual abuse while armed and second-degree child sexual abuse while armed because the conduct involved was a part of one continuous course of action, and therefore, these offenses merge. He also argues that the trial court erred in denying, without a hearing, his post-trial motion to vacate the convictions based on alleged ineffective assistance of his trial counsel. We hold the convictions are for separate criminal acts for which there is no Double Jeopardy bar. We also find no error in the trial court's denial of appellant's motion to vacate convictions.

## I.

### Factual Background

The offenses occurred on June 16, 1997, the fifteenth birthday of N.V., the complaining witness. N.V. testified that on that afternoon, she was in her family's apartment with one of her friends when she went to the door in response to a knock. She observed a man, whom she identified later as Sanchez–Rengifo, wearing a paint-splattered blue and white striped shirt and blue pants, an orange and white "Home Depot" hat, and brown paint-

D.C.Code §§ 22–4108, –3202 are respectively D.C.Code §§ 22–3008, –4502 (2001). In this opinion, we refer to the statutes as codified when Sanchez–Rengifo was indicted and convicted.

splattered boots. She testified that the man told her that he was there to make repairs in the apartment and assured her that her mother knew about the work. N.V. admitted Sanchez–Rengifo into the apartment where he looked around the apartment, including her mother's bedroom. N.V. pointed out a problem with the bars on her bedroom window. Sanchez–Rengifo told N.V. that he would return, and left the apartment. Soon afterwards, N.V.'s friend left the apartment.

Within minutes, Sanchez–Rengifo returned, and N.V. let him in. N.V. was talking on the telephone at the time, and Sanchez–Rengifo asked her to end the conversation so that they could talk about the repairs. N.V. complied, walked into her mother's bedroom, and as she turned around, she saw that Sanchez–Rengifo was holding a knife. He warned her that he would kill her if she made any noise. He then ordered her to sit on her mother's bed and to remove her clothes, which she did. For the next two hours approximately, Sanchez–Rengifo forced N.V. to engage in various sexual acts.[2]

## II.

Sanchez–Rengifo argues that his convictions for first and second-degree child sexual abuse while armed merge because the criminal conduct involved constitutes one continuous sexual assault. Therefore, he contends, the convictions of these offenses under the circumstances violate the Double Jeopardy Clause of the Constitution. The government argues that there is no Double Jeopardy bar to the convictions because the indictment charged four sepa-

2. We recount in Part II. B. the circumstances of the offenses in connection with an analysis of Sanchez–Rengifo's argument that his actions constituted a single continuous course of conduct, rather than separate and distinct acts.

rate and distinct acts of criminal conduct which were submitted separately for consideration by the jury, and the evidence dispelled the claim that the various sexual assaults constituted a continuous course of conduct resulting in only one criminal violation.

### A. *Applicable Legal Principles*

■ We review a claim of merger of convictions de novo " 'to determine whether there has been a violation of the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States.' " *Maddox v. United States,* 745 A.2d 284, 294 (D.C.2000) (quoting *Nixon v. United States,* 730 A.2d 145, 151–52 (D.C.), *cert. denied,* 528 U.S. 899, 120 S.Ct. 233, 145 L.Ed.2d 196 (1999)). "The Double Jeopardy Clause prohibits a second prosecution for a single crime and protects against multiple punishments for the same offense." *Id.* (quoting *Gardner v. United States,* 698 A.2d 990, 1002 (D.C.1997) (citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). Where there are duplicate convictions for the same offense, one or more must be vacated in order that only one conviction and sentence remains for a single offense. *Brown v. United States,* 795 A.2d 56, 63 (D.C.2002). Even when concurrent sentences are imposed, the Double Jeopardy Clause precludes duplicate convictions because of the potential adverse collateral consequences of the convictions.[3] *Id.* (citing *(Samuel) Byrd v. United States,* 500 A.2d 1376, 1380–82 (D.C.1985)), *adopted en banc,* 510 A.2d 1035 (D.C. 1986)); *see also Robinson v. United States,* 501 A.2d 1273, 1274 n. 2 (citing *(Samuel) Byrd,* 500 A.2d at 1380–81; *Harling v.*

United States, 460 A.2d 571, 572 (D.C. 1983); *Doepel v. United States,* 434 A.2d 449, 459 (D.C.), *cert. denied,* 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483 (1981)). "The Fifth Amendment does not prohibit separate and cumulative punishment for separate criminal acts." *Owens v. United States,* 497 A.2d 1086, 1094–95 (D.C.1985), *cert. denied,* 474 U.S. 1085, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986).

■ In determining whether multiple convictions are constitutionally permissible for criminal conduct which violates two distinct statutory provisions, absent a clearly contrary legislative intent, we apply the *Blockburger* test. *(Lindbergh ) Byrd, supra* note 3, 598 A.2d at 389 (citing *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). The *Blockburger* test is based on the statutory elements of the offense as opposed to the specific facts of the case. *Id.* Under that test, whether there are two offenses for which punishment may be imposed or only one depends upon "whether each provision requires proof of a fact which the other does not." *Id.* (quoting *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180).

■ On the other hand, "a fact-based approach remains appropriate where a defendant is convicted of two violations of the same statute." *Morris v. United States,* 622 A.2d 1116, 1130 (D.C.1993), *cert. denied,* 510 U.S. 899, 114 S.Ct. 270, 126 L.Ed.2d 221 (1993). Under a fact-based analysis, whether separate criminal acts have occurred depends upon whether they can be found to be factually separate. *See Gray v. United States,* 544 A.2d 1255, 1257–59 (D.C.1988). For purposes of this

---

**3.** The Double Jeopardy Clause provides protections against: (1) prosecutions for the same offense after acquittal or after conviction; and (2) multiple punishments for the same offense. *(Lindbergh) Byrd v. United*

States, 598 A.2d 386, 388 n. 4 (D.C.1991) (en banc) (citing *Pearce, supra,* 395 U.S. at 717, 89 S.Ct. 2072). Multiple punishments are challenged in this case.

fact-based merger analysis, criminal acts are considered separate when there is an appreciable length of time "between the acts that constitute the two offenses, or when a subsequent criminal act 'was not the result of the original impulse, but a fresh one.'" *Hanna v. United States,* 666 A.2d 845, 853 (D.C.1995) (quoting *Blockburger, supra,* 284 U.S. at 303, 52 S.Ct. 180). Both Sanchez–Rengifo and the government take the position that in determining whether the conduct involved in this case constitutes one or more criminal acts, a fact-based analysis applies.

Three of the convictions involved in Sanchez–Rengifo's challenge are for violations of D.C.Code §§ 22–4108, –3202 (first-degree child sexual abuse while armed), and

the fourth is for violation of D.C.Code §§ 2–4109, –3202 (second-degree child sexual abuse while armed).[4] The term "sexual act" is defined, in pertinent part, in D.C.Code § 22–4101(8)[5] as: "(A) [t]he penetration, however slight, of the . . . vulva of another by a penis; [or] (B) [c]ontact between the mouth and the penis, the mouth and the vulva . . . ." The term "sexual contact" is defined in the statute in pertinent part as "the touching with any . . . body part . . . of the . . . breast . . . of any person with an intent to abuse, . . . arouse or gratify the sexual desire of any person." D.C.Code § 22–4101(9). The indictment charges Sanchez–Rengifo with committing each of these acts described in the foregoing statutory provisions.[6]

4. D.C.Code § 22–4108 provides:
   [w]hoever, being at least 4 years older than a child, engages in a sexual act with that child or causes that child to engage in a sexual act shall be imprisoned for any term of years or for life and, in addition, may be fined an amount not to exceed $250,000.
   D.C.Code § 22–4109 provides:
   [w]hoever being at least 4 years older than a child, engages in sexual contact with that child or causes that child to engage in sexual contact shall be imprisoned for not more than 10 years and, in addition, may be fined in an amount not to exceed $100,000.
   D.C.Code § 22–3202 is the "while armed" element charged for each of the offenses.

5. Recodified as D.C.Code § 22–3001 (2001).

6. The indictment charges in pertinent part as follows:
   Third Count: On or about June 16, 1997, within the District of Columbia, Humberto Freddy Sanchez–Rengifo, a.k.a. Freddy Humberto Sanchez–Rengifo, being more than four years older than N.V., a child under sixteen years of age, that is, fifteen years of age, engaged in sexual contact with that child, that is, touching her breasts with his mouth, while armed with a dangerous weapon, that is, a knife. (Second-degree child sexual abuse in violation of 22 D.C.Code 4109, 3202).

   Fourth Count: On or about June 16, 1997, within the District of Columbia, Humberto Freddy Sanchez–Rengifo, a.k.a. Freddy Humberto Sanchez–Rengifo, being more than four years older than N.V., a child under sixteen years of age, that is, fifteen years of age, engaged in a sexual act with that child, that is, putting his mouth on her vulva, while armed with a dangerous weapon, that is, a knife. (First-degree child sexual abuse in violation of 22 D.C.Code 4108, 3202).

   Fifth Count: On or about June 16, 1997, within the District of Columbia, Humberto Freddy Sanchez–Rengifo, a.k.a. Freddy Humberto Sanchez–Rengifo, being more than four years older than N.V., a child under sixteen years of age, that is, fifteen years of age, engaged in a sexual act with that child, that is, penetrating her vulva with his penis, while armed with a dangerous weapon, that is, a knife. (First-degree child sexual abuse in violation of 22 D.C.Code 4108, 3202).

   Sixth Count: On or about June 16, 1997, within the District of Columbia, Humberto Freddy Sanchez–Rengifo, a.k.a. Freddy Humberto Sanchez–Rengifo, being more than four years older than N.V., a child under sixteen years of age, that is, fifteen years of age, engaged in a sexual act with that child, that is, putting his penis in her mouth, while armed with a dangerous weapon, that is, a knife. (First-degree child

### B. *Analysis*

Sanchez–Rengifo argues that the sexual offenses involved here, like other forms of criminal assault, are considered "continuing crimes" for which multiple punishments are barred on Double Jeopardy grounds. Indeed, "[w]e have recognized that '[s]ome crimes by their very nature, tend to be committed in a single continuous episode rather than in a series of individually chargeable acts.'" *Gardner, supra,* 698 A.2d at 1002 (quoting *Owens, supra,* 497 A.2d at 1096). Among these are rape and assault. *Id.* Thus, that an assault is accomplished by several blows or methods, does not mean that multiple crimes and sentences may be imposed. *Owens,* 497 A.2d at 1096 (citing *Smith v. United States,* 135 U.S.App.D.C. 284, 285, 418 F.2d 1120, 1121, *cert. denied,* 396 U.S. 936, 90 S.Ct. 280, 24 L.Ed.2d 235 (1969) (other citation omitted)). Similarly, repeated acts of forced sexual intercourse, if committed in a single course of conduct, will not be converted into separate rapes. *Gray, supra,* 544 A.2d at 1258–59. Sanchez–Rengifo relies upon *Gray* in support of his argument that his convictions for child sexual abuse merge.

In *Gray,* where a defendant challenged his rape conviction because of the court's failure to give, *sua sponte,* a special unanimity instruction, we declined to find

plain error, concluding that the short spatial and temporal separations between the attacker's two separate acts of sexual intercourse with his victim did not convert this single episode into separate acts of rape.[7] 544 A.2d at 1258–59. In concluding that the acts were neither factually nor legally separable, we considered persuasive that the time and spatial separations between the three sexual acts involved "did not terminate [Gray's] original intent to have and complete sexual intercourse against the will of the complainant."[8] *Id.*

Sanchez–Rengifo argues that the facts presented here compel the same conclusion reached in *Gray.* Specifically, he points out that in this case there was no spatial or temporal separation between the several sexual acts, which all took place in the child's mother's bed. In fact, unlike *Gray,* the assaults in this case lasted approximately two hours, not minutes. During that two hour period, Sanchez–Rengifo committed against N.V. various types of sexual assaults prohibited by law, which we describe in detail to aid in the analysis of the argument.

After threatening N.V. while armed with the knife, Sanchez–Rengifo ordered her to sit on the bed and remove her shirt and bra. He sat beside her and began licking her breasts. He then told her to remove her pants, shoes and panties. Sanchez–

---

sexual abuse in violation of 22 D.C.Code 4108, 3202).

**7.** Under the Sixth Amendment, the accused in a criminal trial has the right to have his guilt or innocence determined by a unanimous verdict of the jury. *Gray, supra,* 544 A.2d at 1257 (quoting *Owens, supra,* 497 A.2d at 1092 (other citations omitted)). To meet the requirements of the unanimity rule, "if a single count encompasses two or more factually or legally separate incidents, the trial court is required to instruct the jury that it must reach unanimous agreement as to the incident or incidents upon which the verdict is based."

*Id.* (citing *Shivers v. United States,* 533 A.2d 258, 261 (D.C.1987)).

**8.** The evidence showed that appellant raped his victim just off the path in a park and then dragged her some forty to forty-five feet deeper into the park where he resumed having sexual intercourse with her. *Gray, supra,* 544 A.2d at 1256. He stopped the attack briefly to give the victim a cigarette, which she had hoped to use against him. *Id.* He paused again when interrupted by the approach of two men on the path, but after they left, he forced the complainant to engage in fellatio and sexual intercourse again. *Id.*

Rengifo unzipped his pants and rubbed his penis back and forth before instructing N.V. to lay on her back. When he inserted his penis into her vulva, she screamed in pain, and he told her to shut up and again threatened to kill her. Sanchez–Rengifo then licked her breasts again before forcing the child to perform fellatio. He also attempted to have anal intercourse with her, and when he was not successful, he ordered her to change positions so he could try vaginal penetration again. He then "stopped" and "started licking [her] vagina." After another failed attempt to penetrate her anus with his penis, he penetrated her vulva again. N.V. testified that he held the knife toward her during each of the assaults and threatened repeatedly to kill her. At some point after darkness fell, Sanchez–Rengifo got up to turn on the lights in the bedroom. Only the sound of N.V.'s nine-year-old brother entering the apartment allowed her the opportunity to run out of the apartment, still naked, and report the rape to her mother who was sitting on a neighbor's porch. Sanchez–Rengifo argues that these circumstances present a continuous course of conduct which precludes punishment for more than one offense.

In addition to the temporal difference between this case and *Gray*, there is a difference between the nature of the offenses alleged. *See Gray, supra,* 544 A.2d at 1258 (citing *Scarborough v. United States,* 522 A.2d 869, 873 (D.C.1987) (en banc)) ("The nature of the crime alleged may be important to the determination of whether [there is] a 'separately cognizable incident.' "). When the case was tried, Gray was charged with a single count of rape arising out of the three times during the brief interval that he forced his victim to have sexual intercourse with him. *Id.* at 1255. In contrast, Sanchez–Rengifo was charged with three separate acts of first-degree child sexual abuse prohibited

under D.C.Code §§ 22–4108, –4101(8) and one instance of second-degree child sexual abuse as specified in D.C.Code §§ 22–4109, –4101(9). These statutory provisions enumerate separate and discrete sex acts punishable when perpetrated upon a minor child. The legislative history indicates that in recommending the enactment of the "Anti–Sexual Abuse Act of 1994," which includes these provisions, the Council of the District of Columbia intended to "make the laws governing sexually abusive conduct more inclusive, flexible and reflective of the broad range of abusive conduct which does in fact occur . . . ." COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT OF THE COMMITTEE ON THE JUDICIARY, Bill 10–87, The "Anti–Sexual Abuse Act of 1994," p. 1 (1994). These discrete acts of abusive conduct include, as charged here, and as the evidence shows: (1) "sexual contact," consisting of Sanchez–Rengifo placing his mouth on N.V.'s breast, *see* D.C.Code § 22–4101(9); (2) "sexual acts," consisting of the penetration of the vulva of another by a penis, *see* D.C.Code 22–4101(8)(A) and "[c]ontact between the mouth and the penis [and] "the mouth and the vulva . . .," *see* D.C.Code § 22–4101(8)(B). For each of these acts, different interests are protected; different acts are made criminal; and, some different elements of proof are required. Thus, it appears that the legislature, at least, viewed each of these methods of committing first and second-degree child sexual abuse as different in nature and character.

Sanchez–Rengifo also cites *Glymph v. United States,* 490 A.2d 1157 (D.C.1985) and *Shivers v. United States,* 533 A.2d 258 (D.C.1987) in support of his merger argument. In *Glymph,* appellant was convicted of assault as the lesser included offense of assault with a dangerous weapon (baseball bat). 490 A.2d at 1158 & n. 2. There, the appellant argued that he could not be

convicted of assault because the beatings he administered, which all occurred in various parts of his apartment, were separate assaults for which he had not been charged. *Id.* at 1160. We rejected this argument, concluding that the evidence established a continuing course of assaultive conduct. *Id.* at 1161. *Shivers* also involved a simple assault conviction where appellant argued on appeal that his assault of a single victim constituted two separate offenses. *Shivers,* 533 A.2d at 261. Therefore, he contended that the jury instructions failed to assure a unanimous verdict. *Id.* Where the facts showed that there was a break in the assault of less than half an hour during which appellant changed his clothes before resuming the altercation, "funneled by the same original provocation," this court viewed the case as more akin to *Glymph. Id.* at 262. However, ultimately the court left unanswered whether there were two or more incidents which warranted a special unanimity instruction, as it could find no plain error. *Id.* at 263. *Glymph* and *Shivers* are not persuasive support for Sanchez–Rengifo's merger argument. Both involved unanimity arguments rather than the type of merger argument presented here. In each of those cases, the defendant was indicted and convicted for one offense. Here, Sanchez–Rengifo was indicted and convicted of four separate violations of two statutes. Moreover, each of these cases turn on their own unique facts which are not so similar to the facts presented here as to guide our resolution of this case.

In *Brown, supra,* we noted that the material facts of *Gray, supra,* 544 A.2d at 1258, where we applied the "continuing offense" rule in a rape case, were atypical and that "[u]sually this court has rejected the argument that repeated acts of sexual violence or abuse constituted only a single continuous offense." 795 A.2d at 64 (citing *Gardner, supra,* 698 A.2d at 1003); *Spain v. United States,* 665 A.2d 658, 661 (D.C. 1995); *Robinson, supra,* 501 A.2d at 1276. In *Brown,* we rejected appellant's continuing offense argument and held that he could be punished separately for each count of rape and sodomy where he and his two co-defendants took turns in raping and sodomizing the victim while they held her at gunpoint. *Id.* at 59. We explained that each time Brown and his co-defendants assaulted the victim, they came to a different fork in the road and "chose to satisfy a different criminal impulse by inflicting a new outrage on the complainant." *Id.* at 64. "Where 'successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie.'" *Id.* (quoting *Blockburger, supra,* 284 U.S. at 302, 52 S.Ct. 180).

Relying on *Gardner,* the government argues that applying the "fork in the road test" to the facts of this case, shows that the offenses do not merge. Specifically, it contends that the facts show that Sanchez–Rengifo made an independent determination to break off one type of sexual act and begin a different course of action. *Gardner* involved an appeal from two rape convictions in which the appellant argued that the two constituted only one offense, and therefore, one conviction must be vacated. 698 A.2d at 1002. Between the two acts of rape committed by the appellant, the complainant was forcibly raped and sodomized by a co-defendant, and appellant left the alley before returning to start again. *Id.* at 1002–03. The dispositive issue formulated on appeal was "whether there was any evidence that [the appellant] reached a 'fork in the road', leading to a 'fresh impulse' which resulted in a separate offense." *Id.* The relevant factors for making this determination "include the passage of time, a change of location, and any evidence that the defen-

dant may have reformulated his intent." *Id.* at 1003 (citing *Owens, supra,* 497 A.2d at 1096–97). Although the interval between the two rape offenses was brief, it was legally significant in that it provided an opportunity for reflection. *Id.* The appellant's return to the alley showed that he was driven by a "fresh impulse," and therefore, we concluded that the second rape was a new criminal act, separately punishable. *Id.*

Similarly, in the present case, the facts show that over an extended period of time, Sanchez–Rengifo made decisions to commit different sex acts upon his victim. He "chose to satisfy a different criminal impulse by inflicting a new outrage on the complainant." *Brown, supra,* 795 A.2d at 64. There was "an appreciable period of time" between the various acts that Sanchez–Rengifo forced upon N.V. during which the child's pleas and cries were met with threats.[9] There was time during this two hour period for Sanchez–Rengifo to reflect as he ordered his victim into different positions after completing one form of sexual assault in order to undertake another to satisfy his new impulse. Where, as here, the circumstances are such that

> the defendant can be said to have realized that he has come to a fork in the road, and nevertheless decides to invade a different interest, then his successive intentions make him subject to cumulative punishment, and he must be treated as accepting that risk, whether he in fact knows of it or not.

*Owens, supra,* 497 A.2d at 1095 (quoting *Irby v. United States,* 129 U.S.App.D.C. 17, 22–23, 390 F.2d 432, 437–38 (1967) (en banc) (Leventhal, J., concurring)). Under these circumstances, and given the nature of the offenses, we reject Sanchez–Rengifo's claim of merger of offenses.

---

9. An interval may be quite brief and still satisfy the "appreciable period of time" factor.

## III.

### *Claim of Ineffective Assistance of Counsel*

Sanchez–Rengifo argues that the trial court erred in denying his motion to vacate convictions for ineffective assistance of counsel, pursuant to D.C.Code § 23–110 (1981). He contends that his trial counsel, was ineffective because he (1) failed to call or consult an independent DNA expert, and (2) failed to consult an independent fingerprint expert. The government responds that the trial court properly denied the motion because defense counsel made tactical decisions to use the government's experts, which he did effectively, and Sanchez–Rengifo was not prejudiced.

To establish a claim of ineffective assistance of counsel, appellant must show: (1) that his trial counsel's performance was deficient, *i.e.,* unreasonable under prevailing professional norms; and (2) that the deficiency resulted in prejudice to the extent that there is "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The failure to make the requisite showing of either deficient performance or prejudice will defeat the claim. *Kinard v. United States,* 635 A.2d 1297, 1303 (D.C.1993) (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052) (other citation omitted). Upon review, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

*Gardner, supra,* 698 A.2d at 1002 (citing *Spain, supra,* 665 A.2d at 661).

*Strickland,* 466 U.S. at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). Our review of the record persuades us that the trial court did not err in denying Sanchez–Rengifo's motion.

### (1) *Failure to Consult Independent DNA Expert*

■ Defense counsel called the government's expert, Alan Guisti, who testified that the primary source of the DNA on a sanitary napkin obtained from the victim after the crime was that of the victim herself. He testified that "it was not possible to make a conclusive determination as to who the other DNA donor might be." With respect to a semen stain found on the sheet taken from N.V.'s mother's bed, Mr. Guisti testified that the semen donor was not Sanchez–Rengifo. Sanchez–Rengifo argues that more powerful evidence could have been secured if defense counsel had secured his own expert. In support of the argument, he appended to his post-trial motion a letter written by Dr. Amanda Sozer in which she states that there was insufficient data to report that there were two sources of DNA on the napkin. In her report, she wrote: "There was no reaction with the HBGG B dot which would indicate the presence of DNA from the suspect." Sanchez–Rengifo contends that, if provided with this evidence, the jury would have had to conclude either: (1) that the sample was not a mixture, but came only from complainant; or (2) the sample was a mixture, but he was not the donor.[10] Such scientific evidence, he contends, would have created a reasonable doubt as to his guilt.

As the trial court found, "[t]his is not a case where defense counsel failed to analyze the DNA evidence. Instead, counsel decided to call as his own witness the expert who performed the analysis on the DNA evidence for the government, and elicited from him testimony favorable to the defense." The trial court viewed the decision as a tactical one, as defense counsel understood the scientific evidence and chose to utilize the favorable evidence available through government experts, rather than secure his own experts. We agree that the circumstances show that this is a case in which "the challenged action 'might be considered sound trial strategy.'" *Strickland, supra,* 466 U.S. at 689, 104 S.Ct. 2052 (quoting *Michel, supra,* 350 U.S. at 101, 76 S.Ct. 158). "Mere errors of judgment and tactics as disclosed by hindsight do not, by themselves, constitute ineffectiveness." *Curry v. United States,* 498 A.2d 534, 540 (D.C.1985) (citing *Carter v. United States,* 475 A.2d 1118, 1122 (D.C.1984), *cert. denied,* 469 U.S. 1226, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985) (footnote and other citations omitted)). We see no basis to conclude that the defense counsel's decision to take advantage of the type of favorable evidence available through a government witness under the circumstances presented here can be considered a departure from reasonable professional assistance.

Even assuming for the sake of argument that defense counsel's strategy could be deemed to constitute ineffectiveness, Sanchez–Rengifo fails to show that the defense was prejudiced thereby under the *Strickland* standard. *See Kinard, supra,* 635 A.2d at 1305 (*citing Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). First, the DNA evidence relied upon by trial counsel was favorable to Sanchez–Rengifo. It is not clear that Dr. Sozer could state unequivocally that the sample was not a mixture, since she stated that it was below the threshold level of reporting to report it as

---

**10.** There was evidence that N.V. was a virgin    before the night of the crime.

a mixture. Second, the evidence against Sanchez–Rengifo was overwhelming, as the trial court observed in making its ruling on the § 23–110 motion. Sanchez–Rengifo's identification card with his photograph was found at the crime scene immediately after N.V. reported the rape to her mother. N.V., who had an extended opportunity to observe her assailant, identified Sanchez–Rengifo from his photograph on the card as the man who raped her. A neighbor identified Sanchez–Rengifo as the person who came to her door earlier that day wearing paint-splattered work clothes and claiming to be a painting contractor. The police found a U–Haul rental van parked in the area which, according to Sanchez–Rengifo's girlfriend, he had rented with her uncle to finish a painting job in Maryland. Although he was to return the van that day, he did not do so. The complaining witness also identified a pair of paint-stained pants and a blue and white striped shirt recovered from Sanchez–Rengifo's apartment as the clothes he was wearing when he assaulted her. Therefore, we conclude that Sanchez–Rengifo has failed to demonstrate *Strickland* prejudice. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

### (2) *Failure to Call Independent Fingerprint Expert*

■ Sanchez–Rengifo argues that the trial court erred in denying his § 23–110 motion on the grounds that his trial counsel was ineffective for failing to call or consult an independent fingerprint expert. Defense counsel called Ms. Florine Allen, the fingerprint expert of the Metropolitan Police Department, who analyzed the latent fingerprints recovered from the apartment where the crimes occurred. Ms. Allen testified that none of the latent fingerprints recovered from the [crime] scene connected [Sanchez–Rengifo] to the offense. The government elicited from the crime scene search officer, Joseph Anderson, that "there are some persons who will not leave fingerprints. We call these people nonsecreters." Sanchez–Rengifo argues that trial counsel should have secured an expert to determine whether he was a "secreter." He contends that an expert who tested him post-trial concluded that he was likely to leave a print on a smooth, receptive surface. Such evidence, Sanchez–Rengifo contends, would have prevented the government from undermining his argument that he was not the assailant because his fingerprints were not recovered from the crime scene.

Again, the argument that trial counsel was ineffective is based upon the advantage of hindsight after hearing the government's response to the absence of fingerprint evidence at trial. The trial court concluded that the decision to use the government's expert to show that Sanchez–Rengifo could not be connected to the crime by fingerprints after the government's efforts to locate fingerprints, was not unreasonable under prevailing norms. We need not decide whether this strategy rose to the level of constitutional deficiency because *Strickland* prejudice has not been shown. The evidence against Sanchez–Rengifo was overwhelming, as above-described. There was evidence that Sanchez–Rengifo's prints were not recovered from the van either, although the evidence showed that he had used it. With this evidence, the government could have still argued that prints may not be found for a person in a location where he is known to have been. Sanchez–Rengifo does not contend that an additional fingerprint expert could have identified someone else as the rapist. For all of these reasons, we conclude that Sanchez–Rengifo has not shown the requisite prejudice to prevail on this motion. *See Kinard, supra,* 635 A.2d

at 1305 (citing *Strickland, supra,* 466 U.S. at 694, 104 S.Ct. 2052).

### (3) *Pro Se Claims of Ineffective Assistance of Counsel*

Finally, Sanchez–Rengifo argues that the trial court erred in denying, without a hearing, his *pro se* claims that "trial counsel was ineffective for failing to move to suppress tangible evidence and for failing to introduce the complainant's 911 call." He contends that the 911 call contained an initial description of the assailant that was inconsistent with, or could cast doubt upon N.V.'s testimony. He asserts, without argument, that the trial court "erred in denying a hearing on [his] claim that counsel should have filed a motion to suppress...." The trial court rejected each of these claims. It concluded that "[t]rial counsel thoroughly challenged the identification evidence at trial[,]" and the record did not show the alleged inconsistency between the initial description and Sanchez–Rengifo's physical characteristic and that there was no showing of prejudice. As to the claim based upon the suppression issue, the trial court concluded that a motion to suppress the clothing recovered from his girlfriend's apartment on the grounds that it exceeded the scope of the search would have been futile. Trial counsel explained that he could find no grounds on which to file a suppression motion, and Sanchez–Rengifo has offered none. Prejudice cannot be shown where the motion, if filed, would not have been successful. *See Washington v. United States,* 689 A.2d 568, 572 (D.C.1997) (citing *Gooch v. United States,* 609 A.2d 259, 265 (D.C.1992)). The record supports the trial court's rulings on each of these claims.

For the foregoing reasons, the judgment and order appealed from hereby are

*Affirmed.*