Humberto SANCHEZ–RENGIFO,
Petitioner–Appellant,

v.

J.F. CARAWAY, Respondent–Appellee.

No. 14–2876.

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 19, 2014.

Decided Aug. 14, 2015.

Rehearing Denied Oct. 14, 2015.

Humberto Sanchez–Rengifo, Terre Haute, IN, pro se.

Gerald A. Coraz, Attorney, Office of the United States Attorney, Indianapolis, IN, for Respondent–Appellee.

Before RIPPLE, MANION, and WILLIAMS, Circuit Judges.

RIPPLE, Circuit Judge.

Humberto Sanchez–Rengifo, imprisoned after a conviction in the District of Columbia, brought a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the United States District Court for the Southern District of Indiana, the district in which he is serving his sentence. The district court denied the petition and did not address the matter of a certificate of appealability. Mr. Sanchez–Rengifo then filed an appeal here. We conclude that, for purposes of habeas corpus relief, Mr. Sanchez–Rengi-

fo's petition must be deemed as seeking relief from a detention "aris[ing] out of process issued by a State court," 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability is therefore required before he can pursue an appeal in this court. On review of Mr. Sanchez–Rengifo's submissions, we conclude that a certificate of appealability cannot be granted. Accordingly, we dismiss Mr. Sanchez–Rengifo's petition for lack of jurisdiction.

## I

## BACKGROUND

### A.

Mr. Sanchez–Rengifo was convicted by a jury in the Superior Court of the District of Columbia of, among other crimes, three counts of first-degree child sexual abuse while armed and one count of second-degree child sexual abuse while armed. The District of Columbia Court of Appeals described the factual basis for those convictions accordingly:

The offenses occurred on June 16, 1997, the fifteenth birthday of N.V., the complaining witness. N.V. testified that on that afternoon, she was in her family's apartment with one of her friends when she went to the door in response to a knock. She observed a man, whom she identified later as Sanchez–Rengifo, wearing a paint-splattered blue and white striped shirt and blue pants, an orange and white "Home Depot" hat, and brown paint-splattered boots. She testified that the man told her that he was there to make repairs in the apartment and assured her that her mother knew about the work. N.V. admitted Sanchez–Rengifo into the apartment where he looked around the apartment, including her mother's bedroom. N.V. pointed out a problem with the bars on her bedroom window. Sanchez–Rengifo

told N.V. that he would return, and left the apartment. Soon afterwards, N.V.'s friend left the apartment.

Within minutes, Sanchez–Rengifo returned, and N.V. let him in. N.V. was talking on the telephone at the time, and Sanchez–Rengifo asked her to end the conversation so that they could talk about the repairs. N.V. complied, walked into her mother's bedroom, and as she turned around, she saw that Sanchez–Rengifo was holding a knife. He warned her that he would kill her if she made any noise. He then ordered her to sit on her mother's bed and to remove her clothes, which she did. For the next two hours approximately, Sanchez–Rengifo forced N.V. to engage in various sexual acts.

*Sanchez–Rengifo v. United States*, 815 A.2d 351, 353 (D.C.2002). Following his conviction, Mr. Sanchez–Rengifo was sentenced to life without parole on the first-degree child sexual abuse counts and to shorter sentences on the remaining counts of conviction, with all of the sentences to be served concurrently.

While his direct appeal was pending, he challenged his convictions under District of Columbia Code § 23–110, arguing that his trial counsel was constitutionally ineffective for, among other reasons, failing to call an independent DNA expert. The trial court denied his motion for post-conviction relief.

Mr. Sanchez–Rengifo appealed his convictions and sentences, as well as the denial of his post-conviction motion. On appeal, he argued "that his convictions for first and second-degree child sexual abuse while armed merge because the criminal conduct involved constitutes one continuous sexual assault," and, therefore, his convictions for these offenses violated the Double Jeopardy Clause of the Constitution. *Sanchez–Rengifo*, 815 A.2d at 353. He maintained that the trial court erred in denying his post-trial motion. In this respect, he maintained that "his trial counsel[ ] was ineffective because he (1) failed to call or consult an independent DNA expert, and (2) failed to consult an independent fingerprint expert." *Id.* at 359. The District of Columbia Court of Appeals affirmed Mr. Sanchez–Rengifo's conviction and sentence and also upheld the denial of his motion to vacate under § 23–110. *See id.* at 362.

## B.

Mr. Sanchez–Rengifo was assigned to serve his sentence in the United States Penitentiary in Terre Haute, and, in 2014, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the Southern District of Indiana. In his petition, he argued that he was entitled to relief because the prosecution had adduced insufficient evidence of his guilt at trial; specifically, there was no DNA evidence to corroborate the victim's identification of him as the perpetrator. Mr. Sanchez–Rengifo maintained that he therefore was actually innocent of the crimes charged.

The district court denied the petition. The district court explained that "[a] 28 U.S.C. § 2255 motion is the presumptive means by which a federal prisoner can challenge his conviction or sentence, although § 2241 also supplies a basis for collateral relief under limited circumstances,"[1] such as when a federal prisoner establishes that § 2255 is "inadequate or ineffective to test the legality of his detention," 28 U.S.C. § 2255(e). Mr. Sanchez–Rengifo, however, "ha[d] not met that bur-

---

1. R.7 at 2 (citation omitted).

den even after he was invited to do so."[2] Consequently, because it determined that Mr. Sanchez–Rengifo's petition was legally insufficient on its face, the district court denied the petition.

Following its denial of relief, the district court did not indicate whether a certificate of appealability should issue, and Mr. Sanchez–Rengifo never applied for a certificate of appealability in this court.

## II

## DISCUSSION

### A.

■ The Supreme Court recently has reaffirmed "that the failure to obtain a [certificate of appealability]" when one is statutorily required "is jurisdictional." *Gonzalez v. Thaler*, —— U.S. ——, 132 S.Ct. 641, 649, 181 L.Ed.2d 619 (2012). Section 2253 of Title 28 makes clear that a certificate of appealability is required when the petitioner challenges a detention that "arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1)(A). Despite Mr. Sanchez–Rengifo's incarceration in a federal penitentiary, he is not a federal prisoner. He was convicted of his crimes in the Superior Court of the District of Columbia and is considered a "state" prisoner for purposes of federal habeas review. *See Madley v. United States Parole Comm'n*, 278 F.3d 1306, 1309 (D.C.Cir.2002); *Eldridge v. Berkebile*, 791 F.3d 1239, 1243 (10th Cir.2015). Before he may appeal the denial of relief by

the district court, therefore, he must obtain a certificate of appealability. *See Evans v. Circuit Court of Cook Cty.*, 569 F.3d 665, 666 (7th Cir.2009) (citing 28 U.S.C. § 2253(c)(1)(A)).[3]

If a certificate of appealability has not been issued by the district court, and the petitioner has not sought one in this court, we may treat a notice of appeal as a request for a certificate of appealability. *See* Fed. R.App. P. 22(b)(2) ("If no express request for a certificate is filed, the notice of appeal constitutes a request addressed to ʹthe judges of the court of appeals."). Moreover, when we have the benefit of briefing by a pro se petitioner, we may look to his submissions to inform our decision on whether a certificate of appealability should issue. *Cf. Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir.2011) ("When a prisoner on collateral review files a pro se brief containing non-certified claims, we will construe the brief as an implicit request for certification."). Consequently, we turn to Mr. Sanchez–Rengifo's brief to determine whether the statutory standard for issuing a certificate of appealability has been met.

### B.

As we have noted earlier, "[a] court may grant a certificate if the applicant makes a 'substantial showing of the denial of a constitutional right.'" *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir.2008) (quoting 28 U.S.C. § 2253(c)(2)). We have explained that "[a]n applicant has made a

---

**2.** *Id.* at 3.

**3.** The district court, it appears, mistakenly believed that a certificate of appealability was not necessary in this case because it considered Mr. Sanchez–Rengifo to be a federal prisoner attempting to bring his habeas claim under 28 U.S.C. § 2241. Unlike federal prisoners proceeding under 28 U.S.C. § 2255, federal prisoners proceeding under § 2241

need not obtain a certificate of appealability, *see* 28 U.S.C. § 2253(c)(1). However, in order to proceed under § 2241, a federal prisoner must first show that § 2255 is inadequate or ineffective to test his detention. Mr. Sanchez–Rengifo's failure to make this showing was the basis for the district court's dismissal of his petition. *See supra* Part I.B.

'substantial showing' where 'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further." ' " *Id.* (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)*)*. With this standard in mind, we turn to Mr. Sanchez–Rengifo's claims of error.

Mr. Sanchez–Rengifo first argues that D.C.Code § 23–110 was not an adequate or effective avenue for challenging his conviction. If a District of Columbia petitioner has been denied relief under § 23–110, he may proceed on a federal habeas claim only if he establishes that the § 23–110 remedy "is inadequate or ineffective to test the legality of his detention." D.C.Code § 23–110(g). The district court did not assess whether Mr. Sanchez–Rengifo had met this requirement, but instead evaluated Mr. Sanchez–Rengifo's petition according to the statutory standard for petitions filed by *federal* prisoners seeking to invoke § 2241—whether 28 U.S.C. § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e).[4] There is no question, therefore, that the district court misapprehended the statutory standard that provides the procedural mechanism for asserting a constitutional violation.

■ However, such an error, standing alone, does not constitute "a substantial showing of the denial of a constitutional right" required for issuance of a certificate of appealability. 28 U.S.C. § 2253(c)(2). Although a court may include a question of procedure within a certificate of appealability, there also must be a substantial constitutional question on which the certificate is premised. *See West v. Schneiter,*

485 F.3d 393, 395 (7th Cir.2007) (citing *Slack,* 529 U.S. at 483–85, 120 S.Ct. 1595). The fact that the district court applied the incorrect statutory standard in determining whether Mr. Sanchez–Rengifo could pursue his federal habeas claim, without more, does not satisfy this requirement.

■ When we turn to Mr. Sanchez–Rengifo's substantive contentions in his brief, we cannot find a substantial constitutional question upon which to premise the grant of a certificate of appealability. He argues that his conviction violated the Due Process Clause because there was no DNA evidence to corroborate the victim's unreliable identification of him as the perpetrator. We have held, however, that "[c]redible testimony of one identification witness is sufficient to support a conviction." *United States ex rel. Wandick v. Chrans,* 869 F.2d 1084, 1089 (7th Cir.1989). The jury was entitled to believe the victim even in the absence of conclusive physical evidence.

Mr. Sanchez–Rengifo also takes issue with the victim's identification of him as the perpetrator. An identification card with Mr. Sanchez–Rengifo's picture on it was found in the victim's mother's bedroom, where the rape occurred. According to Mr. Sanchez–Rengifo,

[o]fficers then displayed the card to the victim and inquired if that was her assailant. The victim gave a vague and inconclusive response. However, by the time of the jury trial, the victim's story had changed to the extent that she was now certain that Humberto Sanchez–Rengifo was the same person as the one depicted in the expired picture identification card.[5]

---

4. *See supra* note 3.

5. Appellant's Br. 27–28.

Mr. Sanchez–Rengifo does not identify any portions of the state-court record to support his assertion that the officers displayed the identification card to the victim. Moreover, the excerpts of the trial transcript appended to Mr. Sanchez–Rengifo's brief do not substantiate his claim. Instead, the victim testified that her mother was the person who both found the identification card and asked her if the man pictured on the identification card was her attacker. There is no basis, therefore, for the assertion that the police participated in a suggestive "show up" procedure.

When law enforcement have not arranged for the suggestive circumstances resulting in the identification, due process usually is satisfied by the "safeguards built into our adversary system that caution juries against placing undue weight on eyewitness testimony of questionable reliability." *Perry v. New Hampshire,* — U.S. ——, 132 S.Ct. 716, 728, 181 L.Ed.2d 694 (2012). There is no evidence in the record that these safeguards were not adequate here; indeed, the transcript pages suggest that the victim was cross-examined regarding her identification at multiple points during the trial. *See id.* (identifying the "right to confront the eyewitness" as one of the safeguards of the adversary system).

■ Finally, Mr. Sanchez–Rengifo contends "that it violated the Double Jeopardy Clause to convict and sentence him for multiple offenses that were committed during one continuous act of rape."[6] "Multiplicity is the charging of a single offense in separate counts of an indictment. This exposes a defendant to the threat of receiving multiple punishment[s] for the same offense." *United States v. Allender,* 62 F.3d 909, 912 (7th Cir.1995) (citation omitted). However, "the Double Jeopardy Clause does not preclude the imposition of multiple punishments for the same offense, so long as the legislature has authorized cumulative punishment." *McCloud v. Deppisch,* 409 F.3d 869, 873 (7th Cir.2005). "In order to determine whether a given indictment contains multiplicitous counts, we look to the applicable criminal statute to see what the allowable 'unit' of prosecution is—the minimum amount of activity for which criminal liability attaches." *Allender,* 62 F.3d at 912; *see also, e.g., United States v. Pires,* 642 F.3d 1, 15 (1st Cir.2011) ("When an indictment includes multiple counts charging a violation of the same statutory provision and a claim of multiplicity is raised, an inquiring court must determine whether the facts undergirding each count can be treated as a distinct unit of prosecution."). In short, "the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed." *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). Where the legislature intended "to impose multiple punishments, imposition of such sentences does not violate the Constitution." *Id.* "Thus, determining the permissibility of imposing multiple punishments for one course of conduct is a matter of discerning the legislature's intent." *United States v. Patel,* 370 F.3d 108, 114 (1st Cir.2004). The same rule applies to sentences imposed for violations of state law. *See Missouri v. Hunter,* 459 U.S. 359, 368–69, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

■ In this case, the District of Columbia Court of Appeals recounted the various forms of sexual abuse that Mr. Sanchez–Rengifo inflicted upon his victim.[7] Mr.

---

**6.** *Id.* at 32.

**7.** The court stated:

Sanchez–Rengifo was charged with three separate counts of first-degree child sexual abuse under D.C.Code §§ 22–4108 and 22–4101(8) [8]—each relating to a distinct, prohibited, sexual act—and one count of second-degree child sexual abuse under D.C.Code §§ 22–4109 and 22–4101(9),[9] based upon other sexual contact. *See Sanchez–Rengifo*, 815 A.2d at 355 n. 6. As explained by the D.C. Court of Appeals, both the language of the statute, as well as the legislative history, lead to the conclusion that the legislature meant to punish each of these acts separately:

> These statutory provisions enumerate separate and discrete sex acts punishable when perpetrated upon a minor child. The legislative history indicates that in recommending the enactment of the "Anti–Sexual Abuse Act of 1994," which includes these provisions, the

Council of the District of Columbia intended to "make the laws governing sexually abusive conduct more inclusive, flexible and reflective of the broad range of abusive conduct which does in fact occur...." Council Of The District Of Columbia, Report Of The Committee On The Judiciary, Bill 10–87, The "Anti–Sexual Abuse Act of 1994," p. 1 (1994). These discrete acts of abusive conduct include, as charged here, and as the evidence shows: (1) "sexual contact," consisting of Sanchez–Rengifo placing his mouth on N.V.'s breast, *see* D.C.Code § 22–4101(9); (2) "sexual acts," consisting of the penetration of the vulva of another by a penis, *see* D.C.Code 22–4101(8)(A) and "[c]ontact between the mouth and the penis [and] "the mouth and the vulva ...," *see* D.C.Code § 22–4101(8)(B). For each of

---

> After threatening N.V. while armed with the knife, Sanchez–Rengifo ordered her to sit on the bed and remove her shirt and bra. He sat beside her and began licking her breasts. He then told her to remove her pants, shoes and panties. Sanchez–Rengifo unzipped his pants and rubbed his penis back and forth before instructing N.V. to lay on her back. When he inserted his penis into her vulva, she screamed in pain, and he told her to shut up and again threatened to kill her. Sanchez–Rengifo then licked her breasts again before forcing the child to perform fellatio. He also attempted to have anal intercourse with her, and when he was not successful, he ordered her to change positions so he could try vaginal penetration again. He then "stopped" and "started licking [her] vagina." After another failed attempt to penetrate her anus with his penis, he penetrated her vulva again. N.V. testified that he held the knife toward her during each of the assaults and threatened repeatedly to kill her.

*Sanchez–Rengifo v. United States*, 815 A.2d 351, 356–57 (D.C.2002).

8. D.C.Code § 22–4108 (1981) provided:
Whoever, being at least 4 years older than a child, engages in a sexual act with that child or causes that child to engage in a

sexual act shall be imprisoned for any term of years or for life and, in addition, may be fined an amount not to exceed $250,000. A "[s]exual act" was defined as
(A) The penetration, however slight, of the anus or vulva of another by a penis; (B) Contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; or (C) The penetration, however slight, of the anus or vulva by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. D.C.Code § 22–4101(8) (1981).

9. D.C.Code § 22–4109 (1981) provided: "Whoever, being at least 4 years older than a child, engages in sexual contact with that child or causes that child to engage in sexual contact shall be imprisoned for not more than 10 years and, in addition, may be fined in an amount not to exceed $100,000." "Sexual contact" was defined as "the touching with any clothed or unclothed body part or any object, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." D.C.Code § 22–4101(9) (1981).

these acts, different interests are protected; different acts are made criminal; and, some different elements of proof are required. Thus, it appears that the legislature, at least, viewed each of these methods of committing first and second-degree child sexual abuse as different in nature and character.

*Id.* at 357 (alterations in original). Because the legislature defined the unit of punishment as each act of child sexual abuse, Mr. Sanchez–Rengifo did not suffer multiple punishments for the same crime, and, consequently, his sentences did not run afoul of the Double Jeopardy Clause. Put simply, he raises no substantial constitutional question that can serve as a predicate for a certificate of appealability, and we can take no further action in this matter.[10]

### Conclusion

Mr. Sanchez–Rengifo has not raised a substantial showing that his due process rights or his protections against double jeopardy were violated. Consequently, we deny Mr. Sanchez–Rengifo a certificate of appealability and dismiss his appeal for want of jurisdiction.

APPEAL DISMISSED.

---

10. If a substantial constitutional question were presented and we could issue a certificate of appealability, the proper course would be to vacate the judgment of the district court and remand the case to the district court to determine whether the conditions for filing an action under 28 U.S.C. § 2254 were met. We have no occasion in this case to determine whether all those prerequisites have been met. *See Rumsfeld v. Padilla,* 542 U.S. 426, 442, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004) ("The plain language of the habeas statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."); *Stokes v. United States Parole Comm'n,* 374 F.3d 1235, 1239 (D.C.Cir.2004) ("That Stokes had been arrested and convicted in D.C. in 1987 and that he served a portion of his prison term in a D.C. correctional facility are of no moment under the immediate custodian rule."). The district court also would be required to determine whether the provisions of D.C.Code § 23–110 were "inadequate or ineffective to test the legality of his detention." D.C.Code § 23–110(g).