**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 13, 2016[*]
Decided April 14, 2016

**Before**

JOEL M. FLAUM, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 15-2346

| | |
|---|---|
| BRIAN A. MAUS, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 09-C-42 |
| | |
| DIANE BAKER, et al., | Charles N. Clevert, Jr., |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Brian Maus sued jail officers and other law enforcement personnel for using excessive force against him while he was a pretrial detainee at the Langlade County Jail. *See* 42 U.S.C. § 1983. His claims were tried to a jury, which found for the defendants. Maus appeals, raising six arguments for a new trial. Because his trial was free of prejudicial errors, we affirm the judgment of the district court.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

The events underlying Maus's claims took place in January and April 2007. In January, while a pretrial detainee at the jail, Maus blocked the camera in his cell with toilet paper. Two guards spoke to Maus after citing him for violating jail rules and risking the safety of Maus, other inmates, and jail staff. They explained that he had to be moved to a different cell so that they could clean the camera. After resisting briefly Maus allowed the officers to escort him to a new cell. Almost immediately, however, Maus blocked the camera in his new cell and used his mattress to cover the viewing window of the cell's door. Sergeant Thomas Hunter decided that the bedding had to be removed from Maus's cell to prevent him from obscuring the view into his cell, so he summoned the assistance of two corrections officers, James Benishek and Bobby Jo LaBarge.

The three officers entered Maus's cell, and a brief scuffle ensued. Hunter and Benishek held Maus as LaBarge gathered his bedding. Once LaBarge removed the bedding from the cell, Benishek ordered Maus to stand at the back of the cell while he and Hunter left. Maus initially complied, but as Benishek was backing out of the cell Maus lunged towards him. Benishek testified that he pushed against Maus's chest to direct him to the back of the cell. Maus replied that Benishek choked his throat for up to 30 seconds before Benishek and Hunter left the cell.

In April, Maus again blocked the camera and window of his cell. The jail administrator, Diane Baker, along with three others (Joe Stegall, Heidi Walrath, and Mark Hoerman) went to Maus's cell to move him. Baker told Maus that, as before, he must relocate to a different cell so that they could clear the obstructions. Maus grabbed his bin full of legal papers and began to leave. But Baker told Maus that he could not take his legal papers because he might use them to cover the camera in his new cell. When Maus resisted, the team pried his fingers from the bin. Stegall and Hoerman then took him to the new cell, but as Stegall backed out of that cell, Hoerman, Walrath, and Baker saw Maus swing at Stegall. (Maus denied that he tried to hit Stegall.) Stegall dodged Maus and left the cell. Then, to prevent the cell door from closing, Maus crammed his chest, hands, and feet into the door jam. Walrath responded with an electrical stun device that emitted a small electrical shock to Maus's hand. Maus removed his hands and body, allowing the officers to shut the cell door.

A short while later, Maus, having somehow acquired paper, once again covered his cell's camera. Concluding that Maus had to be moved to yet another cell to clear the obstruction, recalling his previous resistance, and deciding that he needed to be searched for paper, Baker called for backup. Several members of the Langlade County Sheriff's Department responded to the call. Sergeant Keith Svoboda went to Maus's cell, and

when Maus refused to move, Svoboda and Deputy Sheriff Russell Cook grabbed Maus's arms and extracted him from the cell. They stabilized Maus against a wall in the hallway so he could be searched. Several officers testified that Maus moved his mouth toward Svoboda's hand, which was on Maus's shoulder. Svoboda exclaimed, "Are you trying to bite me?" and Maus answered yes. (Maus denied that he tried to bite Svoboda.) Svoboda testified that Maus, in attempting to bite him, chewed off the knuckle of the latex glove he was wearing. Deputy Sheriff Mark Westen, standing a few feet away with his taser drawn, fired it at Maus. With Maus incapacitated from the taser shot, Svoboda and Cook lowered him to the ground where Hoerman discovered toilet paper stashed in Maus's sock. Svoboda and Cook then carried Maus into a new cell and placed him on the bed. Stegall removed the taser probes from Maus's back, and Walrath, who was standing nearby, cleaned the small wound and covered it with a bandage.

Maus sued, alleging excessive force. He asserted that jail officers used excessive force in January when they entered his cell and (according to Maus) Benishek choked him. He also alleged that Svoboda, Cook, Stegall, and Westen used excessive force in April when Svoboda and Cook removed him from his cell, they pushed him against the wall, and Westen fired the taser. Finally, Maus accused other defendants of failing to prevent the use of excessive force in April.

With recruited counsel, Maus's suit proceeded to trial. A jury returned a verdict against him, but we remanded for a new trial because the district judge had prejudiced Maus by requiring him to wear prison garb and shackles before the jury. *Maus v. Baker*, 747 F.3d 926 (7th Cir. 2014). On remand Maus received new counsel, a new judge, and a new trial. This time Maus appeared without restraints and in a business suit throughout the three-day jury trial. The jury once again returned a verdict in favor of the defendants. Maus moved for a new trial raising arguments that he renews on appeal, and the district judge denied the motion.

Maus raises six arguments on appeal. First, he contends that the jury's verdict was not fair because several officers committed perjury. Maus says that Svoboda lied when he testified that Maus had tried to bite him; his testimony must be false, Maus explains, because if Maus really had bitten him Svoboda would have sought medical attention. Similarly, Maus continues, the testimony of Walrath, Westen, and Stegall—that they saw the bite attempt—is a lie because he denied they could see him attempt to bite Svoboda from where they stood. But Maus has merely presented an arguable conflict in the evidence. It is the role of the jury and the adversarial use of cross-examination to detect and evaluate any supposed discrepancies within or between the testimonies of

witnesses. *See Perry v. New Hampshire*, 132 S. Ct. 716, 728 (2012); *Sanchez-Rengifo v. Caraway*, 798 F.3d 532, 537 (7th Cir. 2015). Even if the witnesses' accounts conflicted, that would not necessarily mean that the jury's verdict was based on perjured evidence. *See United States v. Freeman*, 691 F.3d 893, 900–01 (7th Cir. 2012); *United States v. Alcantar*, 83 F.3d 185, 189–90 (7th Cir. 1996) (jury may still credit witness's story even after cross-examination exposes inconsistencies). Accordingly the verdict is sound.

Second, Maus argues that the district court erred when on remand it refused his pro se request to add four defendants whom he had voluntarily dismissed from his first trial. The issue is waived. At the pretrial conference, his new attorneys said they did not want to pursue Maus's pro se request, and Maus agreed with them. He told the district judge that instead of pursuing his case without the assistance of counsel, he would keep his attorneys and withdraw the request. And waiver aside, once Maus was represented by counsel, he could not pursue motions pro se. *See Sheikh v. Grant Reg'l Health Ctr.*, 769 F.3d 549, 552 (7th Cir. 2014); *United States v. Williams*, 495 F.3d 810, 813 (7th Cir. 2007). Thus the district court did not err in refusing to consider Maus's pro se motion.

Third, Maus argues that the district court abused its discretion by suppressing a "cell extraction manual" that Maus says was listed on the parties' stipulated exhibit list. But the record reflects that, while this document was on the exhibit list, his attorneys never offered it into evidence. The district court cannot abuse its discretion by excluding evidence no one sought to admit.

Next, Maus argues that he was prejudiced by clothing during trial. He argues that he had to wear the same suit for the three-day trial, and doing so implied that he was an inmate; yet the defendants appeared in their uniforms, enhancing their credibility. But Maus never objected to the appearance of the defendants in their uniforms, nor did he complain to the judge that his own attire was compelled. *Cf. Estelle v. Williams*, 425 U.S. 501, 512–13 (1976) ("[T]he failure to make an objection to the court as to being tried in [prison garb] . . . is sufficient to negate the presence of compulsion necessary to establish a constitutional violation."); *United States v. Arellano*, 137 F.3d 982, 986 (7th Cir. 1998) (same). Moreover the district judge—at the behest of the parties—appropriately advised the jury "to disregard the clothing worn by law enforcement and correctional officers who appeared before [it] in uniform." *Cf. Woods v. Thieret*, 5 F.3d 244, 249 (7th Cir. 1993) (explaining that giving a limiting or curative instruction regarding use of shackles is an "appropriate method[] of eliminating potential prejudice"). Finally Maus merely speculates about prejudice from his attire. The jurors could have concluded that Maus owned only one suit or he wore his favorite one. Thus no harmful error occurred.

Fifth, Maus argues that the presence of non-testifying, uniformed corrections officers in the courtroom prejudiced him because their visibility signaled to the jury that he was a dangerous inmate. Again Maus's argument misses the mark. The district court has discretion to use reasonable measures to maintain order and safety in the courtroom. *See Illinois v. Allen*, 397 U.S. 337, 343 (1970); *United States v. Bell*, Nos. 14-3462 & 14-3470, 2016 WL 629524, at *9–10 (7th Cir. Feb. 17, 2016). And it exercised its discretion prudently. The judge explained that because Maus would not be shackled, corrections officers would be strategically placed at the doorways to ensure that Maus stayed in the courtroom. The judge kept those officers in the back, away from Maus. The court's regular security personnel stood near the witness stand, but did so for all witnesses alike. And the jurors were never permitted to see corrections officers escort Maus to or from the courtroom. Under these circumstances, locating the corrections officers in the courtroom's rear, where they were not adjacent to Maus, was not prejudicial error.

Finally, Maus argues that the district court abused its discretion when it allowed one witness, a nurse, to testify with refreshed recollection. He is incorrect. The nurse testified that the medical records (which she created) would help her recall the events of January and April 2007. And Maus had a chance to review those records before the nurse refreshed her recollection with them. *See* FED. R. EVID. 612(b). That is all the rules of evidence require for the admissibility of refreshed recollection. *See United States v. Vasquez*, 635 F.3d 889, 895 (7th Cir. 2011). Maus replies that, because she did not have his consent to see these records, the jail violated his privacy rights and the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936, when it gave them to her. He contends that the district court should have remedied this violation by excluding her testimony. But "[f]ederal common law has not historically recognized a privilege between patients and physicians" and "HIPAA did not give rise to a physician-patient or medical records privilege." *United States v. Bek*, 493 F.3d 790, 801-02 (7th Cir. 2007). In any case, the medical records were never admitted into evidence. The district court therefore did not abuse its discretion in allowing the nurse's testimony.

AFFIRMED.