*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| NATHAWN KATURL JOHNSON, | ) | |
| | ) | Supreme Court No. S-14557 |
| Petitioner, | ) | Court of Appeals No. A-10467 |
| | ) | |
| v. | ) | Superior Court No. 3AN-07-07506 CR |
| | ) | |
| STATE OF ALASKA, | ) | O P I N I O N |
| | ) | |
| Respondent. | ) | No. 6920 – June 27, 2014 |
| | ) | |

Petition for Hearing from the Court of Appeals of the State of Alaska, on appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Michael Spaan, Judge.

Appearances: Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Petitioner. Tamara E. de Lucia, Assistant Attorney General, Office of Special Prosecutions & Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Respondent.

Before: Fabe, Chief Justice, Winfree, Stowers, and Maassen, Justices. [Bolger, Justice, not participating.]

FABE, Chief Justice.

## I.     INTRODUCTION

Nathawn Katurl Johnson was convicted of and sentenced for, among other crimes, two counts of sexual assault in the first degree relating to his rape of S.S. One

count resulted from Johnson's penetration of S.S.'s mouth without her consent, and the other count resulted from Johnson's penetration of S.S.'s vagina without her consent. Johnson never argued to the superior court that the two counts must merge on double-jeopardy grounds. After Johnson made the double-jeopardy argument for the first time on appeal, the court of appeals held that Johnson had not preserved his merger argument for appeal and that the superior court did not commit plain error by failing to merge the counts sua sponte.

On petition, Johnson argues that the court of appeals erred by denying his late-raised double-jeopardy argument full appellate review on the merits. We agree, and we review Johnson's double-jeopardy claim on its merits. Johnson also argues that his separate convictions on two counts of sexual assault in the first degree violate the state and federal prohibitions on double jeopardy. Because we conclude that Johnson's separate convictions and sentences did not violate the constitutional prohibitions on double jeopardy, we affirm.

## II.    FACTS AND PROCEEDINGS

On July 11, 2007, Nathawn Katurl Johnson kidnapped and sexually penetrated S.S. without her consent. After luring her to a trailer park with a false promise of a job interview, forcing her inside an abandoned trailer at knife point, and holding a knife at her temple once they were inside, Johnson forced S.S. to perform oral sex. Johnson then ordered S.S. to lie down and remove her clothing, and Johnson proceeded to have non-consensual vaginal intercourse with S.S. while continuing to hold the knife to her temple.

A grand jury indicted Johnson on four counts stemming from the events of that day, including one count of kidnapping,[1] one count of assault in the third degree,[2] and two counts of sexual assault in the first degree.[3] The two counts of sexual assault were based on Johnson's non-consensual sexual penetration of S.S.'s mouth and vagina. A jury convicted Johnson of all four counts. Johnson was sentenced to a total consecutive term of imprisonment of fifty-seven years, five months, and two days, followed by fifteen years of probation. This sentence included separate punishments for the two counts of sexual assault in the first degree.

Johnson never explicitly argued in the trial court that the sexual assault counts must merge on double-jeopardy grounds.[4] Instead, Johnson argued that "the Court . . . could have the discretion to merge . . . the two sex assaults." The superior court responded, "I don't think I have any authority at all to merge the second sexual assault with the first sexual assault" under the relevant statute. Johnson responded, "[O]bviously I'd have to make the argument that [that] statute's unconstitutional." This

---

[1] AS 11.41.300(a)(1)(C) ("A person commits the crime of kidnapping if . . . the person restrains another with intent to . . . sexually assault the restrained person . . . .").

[2] AS 11.41.220(a)(1)(A) ("A person commits the crime of assault in the third degree if that person . . . recklessly . . . places another person in fear of imminent serious physical injury by means of a dangerous instrument.").

[3] AS 11.41.410(a)(1) ("An offender commits the crime of sexual assault in the first degree if . . . the offender engages in sexual penetration with another person without consent of that person.").

[4] *See* Alaska Const. art. I, § 9 ("No person shall be put in jeopardy twice for the same offense."); *see also* U.S. CONST. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."); U.S. CONST. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . .").

exchange never mentioned double jeopardy, and Johnson's reference to the statute's potential unconstitutionality may have referred to his earlier argument that a sentence of close to 60 years imprisonment would violate the constitutional prohibition on cruel and unusual punishment. In contrast, Johnson expressly advanced several other double-jeopardy claims, arguing that the count of assault in the third degree should merge with the sexual assault counts, and that the court could not revise its initial sentence and increase the total incarceration time. The superior court gave Johnson ample opportunity to raise these and other objections, stating "I understand why you have to make this . . . record." The superior court asked at the close of the sentencing hearing, "[I]s there anything you want to put on the record?" to which Johnson's response was, "I have nothing to add that . . . I didn't raise a[l]ready."[5]

Johnson appealed his conviction to the court of appeals, arguing that "his two sexual assault convictions should be merged into a single conviction."[6] The court of appeals first concluded that Johnson had forfeited his double-jeopardy argument by failing to raise it in the superior court. It reasoned that although Johnson had argued that the superior court "had the discretion to merge" Johnson's convictions, Johnson's argument that the court was "*required* to merge these two counts" was presented for the

---

[5]     The State, on the other hand, made explicit arguments for why the two counts of sexual assault should not merge and why they should be punished with consecutive sentences, stating "the Court should impose [a second punishment of additional incarceration] because it didn't stop with just violating her once. It's further by humiliating her, forcing that fellatio on her."

[6]     *Johnson v. State*, Mem. Op. & J. No. 5764, 2011 WL 5507037, at *1 (Alaska App., Nov. 9, 2011).

first time on appeal and could not be reviewed unless the court's "failure to merge the two counts constituted 'plain error.' "[7]

The court of appeals further concluded that the superior court did not commit error, plain or otherwise, by failing to merge the sexual assault counts sua sponte. Rather, the superior court "follow[ed] governing precedent on the issue before the court."[8] The court of appeals characterized two of its prior cases — *Yearty v. State*[9] and *Erickson v. State*[10] — as holding that "when a defendant perpetrates distinct types of sexual penetration upon a victim during a single episode of sexual assault, the defendant can be convicted of separate counts for each type of penetration" without running afoul of Alaska's double-jeopardy clause.[11] If Johnson had presented his double-jeopardy argument in the superior court, he would have been required to ask that court to "declare[] that *Yearty* and *Erickson* were wrongly decided" and to "decline[] to follow the precedent set in those two cases."[12] But the court of appeals concluded that following governing precedent can never be plain error.[13] Moreover, the court of appeals reasoned that even if *Yearty* and *Erickson* were wrongly decided, "the matter is no more

---

[7]     *Id.* at *3-4 (emphasis in original).

[8]     *Id.* at *4.

[9]     805 P.2d 987, 995 (Alaska App. 1991).

[10]    950 P.2d 580, 587 (Alaska App. 1997).

[11]    *Johnson,* 2011 WL 5507037, at *4.

[12]    *Id.*

[13]    *Id.*

than debatable. And when a legal matter is no more than debatable, there is no plain error."[14]

We partially granted Johnson's petition for hearing in this court and requested argument on several issues, including what a party must do in the trial court to preserve the right to argue that controlling precedent should be overturned, what scope of appellate review should apply to unpreserved double-jeopardy claims, and what the result should be on the merits of Johnson's double-jeopardy claim.

## III. STANDARDS OF REVIEW

The proper extent of appellate review for an unpreserved claim of constitutional error is a question of law that we review de novo.[15] Under the de novo review standard, we exercise our independent judgment,[16] and our "duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[17]

Whether two convictions should merge on double-jeopardy grounds is a mixed question of law and fact.[18] The ultimate legal question of merger under the double-jeopardy clause is reviewed de novo, while the questions of fact underlying the

---

[14] *Id.* at *5.

[15] *Cf. Adams v. State*, 261 P.3d 758, 764 (Alaska 2011) (considering de novo the question of the scope of plain error review).

[16] *See, e.g.*, *State, Dep't of Health & Soc. Servs. v. Planned Parenthood of Alaska, Inc.*, 28 P.3d 904, 908 (Alaska 2001).

[17] *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979) (first announcing this verbal formulation); *see also Casey K. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 311 P.3d 637, 643 (Alaska 2013).

[18] *See State v. Stone*, 924 A.2d 773, 778 (R.I. 2007).

conviction for the specific counts of statutory violations are reviewed for clear error.[19]
Here, Johnson does not challenge any of the superior court's findings of fact.
Accordingly, we address de novo the purely legal question of whether the two sexual
assault counts should merge under the state and federal constitutions.

## IV.    DISCUSSION

### A.    An Unpreserved Double-Jeopardy Claim Is A Claim Of Fundamental Error That Warrants Full Appellate Review On The Merits.

Typically, a litigant or defendant must raise an objection in the trial court
in order to preserve that argument for appeal.[20]  This general preservation rule is a
prudential gate-keeping doctrine adopted by the courts to serve important judicial

---

[19]      *See Ben M. v. State, Dep't of Health & Soc. Servs., Office of Children's
Servs.*, 204 P.3d 1013, 1018 (Alaska 2009) ("When reviewing mixed questions of law
and fact, we review factual questions under the clearly erroneous standard and legal
questions using our independent judgment."); *see also Michael v. State*, 115 P.3d 517,
519 (Alaska 2005) (concluding that "[a]ny factual findings made by the court regarding
the nature of the defendant's conduct are reviewed for clear error, but whether those facts
establish that the conduct [qualifies as an aggravating or mitigating factor under the
terms of a sentencing statute] is a legal question").

[20]      *Hoffman Constr. Co. of Alaska v. U.S. Fabrication & Erection, Inc.*, 32
P.3d 346, 355 (Alaska 2001) ("As a general rule, we will not consider arguments for the
first time on appeal.").

We have occasionally referred to the failure to preserve an argument for
appeal as "waiver" of that argument. *See, e.g., David S. v. Jared H.*, 308 P.3d 862, 873
(Alaska 2013) ("[The appellant] has waived this claim because he failed to raise it in the
superior court.").  But this terminology fails to distinguish between two types of cases:
those involving a mere failure to object, and those involving the knowing and willful
relinquishment of a right. *Charles v. State*, 287 P.3d 779, 781 (Alaska App. 2012).  We
will refer to the former as a "failure to preserve" while we will refer to the latter as
"waiver."  This case implicates only the former.

policies:[21] ensuring that there is "a ruling by the trial court that may be reviewed on appeal, . . . afford[ing] the trial court the opportunity to correct an alleged error,"[22] and creating a sufficient factual record so "that appellate courts do not decide issues of law in a factual vacuum."[23]

But the general preservation rule is not absolute, and it is subject to prudential exceptions, such as the plain error doctrine.[24] We held in *Adams v. State* that we will review unpreserved claims of plain error and reverse the trial court where there

---

[21] *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("The procedural-default rule is neither a statutory not a constitutional requirement, but it is a doctrine adhered to by the courts" on prudential grounds to serve certain judicial policies.).

[22] *Alexander v. State*, 611 P.2d 469, 478 (Alaska 1980).

[23] *Pierce v. State*, 261 P.3d 428, 433 (Alaska App. 2011).

[24] *See, e.g.*, *Adams v. State*, 261 P.3d 758, 764 (Alaska 2011) (describing the plain error doctrine allowing for some appellate review despite failure to preserve argument in trial court); *Hoffman Constr. Co.*, 32 P.3d at 355 (applying another exception to the general preservation rule, holding that in a civil case "[w]e will consider arguments not raised explicitly in the trial court . . . if the issue is 1) not dependent on any new or controverted facts; 2) closely related to the appellant's trial court arguments; and 3) could have been gleaned from the pleadings" (omission in original)).

In announcing and defining these exceptions to the general preservation rule, we have explained that they are intended to provide us with an opportunity to review certain types of errors that we will not allow to go unreviewed despite the appellant's failure to preserve the argument for appellate review. *See, e.g.*, *Dorman v. State*, 622 P.2d 448, 459 (Alaska 1981) ("The plain error doctrine is specifically intended 'to mitigate . . . the harsh effects of a rigid application of the adversary method of trial . . . .' " (first omission in original) (quoting *Bargas v. State*, 489 P.2d 130, 133 (Alaska 1971) and 8A J. MOORE, FEDERAL PRACTICE ¶ 52.02(2), at 52-4 (2d ed. 1970))). We tailor the boundaries of our prudential preservation requirement in light of the values that doctrine serves and competing interests in reviewing certain types of even unpreserved error. *See, e.g.*, *Raphael v. State*, 994 P.2d 1004, 1015 (Alaska 2000).

was obvious and prejudicial error below affecting substantial rights that did not result from "intelligent waiver or a tactical decision not to object."[25]  In our order partially granting Johnson's petition, we asked the parties to brief the applicability of the plain error doctrine and the holding in *Adams* to the facts of this case.

Johnson argues that "a valid double jeopardy claim *is* a plain error" per se, regardless of any case-by-case analysis under the *Adams* factors.  (Emphasis in original.) He argues that *Adams* does not define the entirety of the plain error doctrine, and he further argues for flexibility even within the *Adams* framework for cases where the obviousness of an error is irrelevant to the question whether that error should be reviewed on appeal for plain error even if unpreserved.[26]

The State argues that *Adams* "defined plain error" and that the multi-factor test set out in *Adams* is the comprehensive and exclusive test for when we will review

---

[25]     261 P.3d at 764.

[26]     Johnson also argues that "full review of double jeopardy cla[i]ms properly preserves the separation of powers" because "[t]he legislature defines crimes" and "when a court convicts and sentences a defendant twice for conduct the legislature has deemed one crime, the court acts contrary to legislative intent."  We disagree.  The prohibition on double jeopardy in Alaska's Constitution, article I, section 9, is a constitutional limitation that is independently enforceable by the courts regardless of any legislative intent to abridge the right.  To be sure, the federal courts have interpreted the federal constitutional prohibition on double jeopardy as applying in cases of alleged multiple punishment to ensure only "that the sentencing discretion of courts is confined to the limits established by the legislature."  *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).  We have rejected this approach to interpreting the Alaska Constitution's prohibition on double jeopardy in cases of alleged multiple punishment.  *See, e.g.*, *Whitton v. State*, 479 P.2d 302, 306, 308, 312 (Alaska 1970) (asking first whether the legislature intended to prescribe multiple crimes for the defendant's behavior but then engaging in an independent determination of whether such multiplicity of punishment violates the state constitutional prohibition on double jeopardy); *see also State v. Dunlop*, 721 P.2d 604, 606 (Alaska 1986) ("We must first determine both the legislature's intent in authorizing multiple sentences and whether such an authorization was within its power.").

unpreserved claims of error for plain error.  The State further argues that the *Adams* factors, including the obviousness factor, are not flexible and that there should be no per se plain error rule for unpreserved double-jeopardy claims.[27]

But we do not need to address how or whether an unpreserved double-jeopardy claim would fit within the rubric of plain error.  A claim of a double-jeopardy violation, even if unpreserved in the trial court, may be raised for the first time on appeal and will always be given full appellate consideration on the merits because the claimed error, if meritorious, would qualify as fundamental error.

---

[27]     The State also argues that the obviousness prong of the *Adams* test cannot be met where the trial court's actions were supported by existing precedent or where the propriety of the trial court's actions was "merely debatable."  Similarly, the court of appeals noted in dicta that "where a legal matter is no more than debatable, there is no plain error."  *Johnson v. State*, Mem. Op. & J. No. 5764, 2011 WL 5507037, at *5 (Alaska App., Nov. 9, 2011).  We note that this view of obviousness is clearly incorrect.  The fact that reasonable people could disagree about a proposition would not prevent a trial court's actions contrary to that proposition from constituting plain error.  *See Johnson v. United States*, 520 U.S. 461, 467-68 (1997) (holding that an error could be "plain" where "near-uniform precedent both from [the United States Supreme Court] and from the [federal] Courts of Appeals held that [the trial court's] course [of action was] proper" at the time of trial but the United States Supreme Court later overturned the relevant precedent after trial); *Charles v. State*, __ P.3d __, Op. No. 6897 at 19, 2014 WL 1663365, at *8 (Alaska, Apr. 25, 2014) (clarifying that the obviousness prong of the *Adams* test for plain error is not a categorically necessary component of plain error and stating that "the core of our plain error analysis" looks to "egregious conduct" that "undermine[s] the fundamental fairness of the trial and contribute[s] to a miscarriage of justice." (quoting *Adams*, 261 P.3d at 764)).  Thus, the obviousness prong of the *Adams* plain error standard is very different from the test in an action pursuant to 42 U.S.C. § 1983 for whether a state actor violated "clearly established" law.  *See Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 586 (Alaska 2007) (" 'The law is "clearly established" if the contours of the right are sufficiently clear that a reasonable official would understand that his actions violate that right.' " (quoting *Crawford v. Kemp*, 139 P.3d 1249, 1255 (Alaska 2006))).

In cases of fundamental error, we have long recognized an exception to the general preservation rule. For example, we have repeatedly held for over 40 years that a criminal defendant may raise the unconstitutionality of a criminal prohibition for the first time on appeal and receive full appellate review without needing to preserve the issue by objecting below.[28] Early in the life of this doctrine, we characterized it as fitting within the doctrine of plain error, concluding that where a person is convicted pursuant to an unconstitutional criminal prohibition, any error would necessarily be plain.[29] But in *Gudmundson v. State*[30] we clarified that unpreserved challenges to a conviction based on a claim that the statutory basis for the conviction is unconstitutional will receive full appellate review, not because the error is plain but because any error would be fundamental or "jurisdictional in character."[31] We agreed with and quoted the court of appeals' opinion in that case, which stated that "[s]uch a claim may be brought at any

---

[28]  *See Gudmundson v. State*, 822 P.2d 1328, 1331 (Alaska 1991) (citing *Crutchfield v. State* for the proposition that "unconstitutionality of regulation or statute can be raised for the first time on appeal"); *Crutchfield v. State*, 627 P.2d 196, 199 (Alaska 1980) ("If the regulation is unconstitutional [for vagueness], Crutchfield's conviction, to the extent that it is based on the regulation, constitutes plain error . . . . We shall therefore consider the issue, although it was not brought to the attention of the trial court."); *Tarnef v. State*, 512 P.2d 923, 928 (Alaska 1973) ("[I]f the statute under which Tarnef was charged is unconstitutional [due to the absence of a criminal intent requirement], the resulting indictment and conviction would constitute plain error . . . ."); *Harris v. State*, 457 P.2d 638, 640 (Alaska 1969) ("[I]f the statute under which appellant was indicted is unconstitutional [due to vagueness], it follows that the indictment and judgment of conviction would be vitiated and we should reverse under the plain error rule . . . .").

[29]  *See Crutchfield*, 627 P.2d at 199; *Tarnef*, 512 P.2d at 928; *Harris*, 457 P.2d at 640.

[30]  822 P.2d 1328.

[31]  *Id.* at 1331.

time because it involves a claim that the complaint 'does not charge a crime.' "[32] Because of the fundamental requirement that a criminal conviction be made pursuant to a valid law, we have long granted full appellate review to all late-raised claims that a criminal prohibition is unconstitutional.[33]

Similarly, we recently held in *Charles v. State* that we will review an unpreserved ex post facto challenge on the merits regardless of whether it constitutes plain error.[34] In that case, we quoted with approval the view of the Texas Court of Criminal Appeals that "because ex post facto challenges attack the legislature's authority to criminalize conduct, 'defendants should not be permitted to waive the protections of the *ex post facto* clause "any more than they may consent to be imprisoned for conduct which is not a crime." ' "[35] We noted that "we would ordinarily review the [unpreserved]

---

[32]  *Id.* (quoting *Gudmundson v. State*, 763 P.2d 1360, 1361 (Alaska App. 1988), *adhered to on reh'g*, Mem. Op. & J. No. 1838, 1989 WL 1595088 (Alaska App., June 28, 1989)).

[33]  Accordingly, the doctrine of fundamental error permits full appellate review of unpreserved objections based on the fundamentality of the rule that the appellant claims was not followed in the trial court; unlike the doctrine of plain error, the size and nature of the deviation from the claimed requirements are irrelevant to whether we will review for fundamental error. That is, "fundamental" modifies the claimed right, not the size or nature of the error deviating from that claimed right. In this way, fundamental error is different from plain error, where the size or nature of the error deviating from the claimed right is a factor we consider when determining whether to review an unpreserved claim of error for plain error.

[34]  __ P.3d __, Op. No. 6897 at 17-20, 2014 WL 1663365, at *7-8 (Alaska, Apr. 25, 2014).

[35]  *Id.* at *7 (quoting *Ieppert v. State*, 908 S.W.2d 217, 220 (Tex. Crim. App. 1995)).

challenge only for plain error,"[36] but found the application of that doctrine to be unnecessary because the protection against ex post facto conviction was so fundamental as to merit full appellate review of even unpreserved claims of error.[37] Moreover, we agreed with the conclusion of the court of appeals in *Charles* that the unpreserved ex post facto challenge should be reviewed because Charles "st[ood] convicted of violating a criminal statute which, under our state constitution, can not apply to him."[38]

Although we have not had a chance to address the existence of other claims of fundamental error necessitating full appellate review,[39] we hold that double-jeopardy claims are also claims of fundamental error that may be raised for the first time on appeal and will be reviewed on the merits in full, regardless of whether the claimed errors would qualify as plain under the plain error doctrine. The constitutional prohibition on double jeopardy is a bulwark of the criminal justice system, "implicat[ing] the very power of the State to prosecute a particular defendant for a particular crime and serv[ing] as an important check on the potential power of the State"; it "is fundamental not only to the process of criminal justice, but to our system of government itself"; and it, like the longstanding line of *Gudmundson* cases, is "a doctrine with obvious jurisdictional

---

[36]     *Id.*

[37]     *Id.* at *8.

[38]     *Id.* (quoting *Charles v. State*, 287 P.3d 779, 790 (Alaska App. 2012)).

[39]     We note that the nature of certain other rights has caused us to allow for full appellate review of an unpreserved claim of error. *See, e.g.*, *McKinnon v. State*, 526 P.2d 18, 23-24 (Alaska 1974) (stating that the constitutional rights to counsel and effective assistance of counsel are "basic" and that "it is . . . well-established that a conviction based on a plea [of nolo contendere] made without the benefit of counsel may subsequently be challenged" and that "a plea of guilty does not foreclose a later attack upon a conviction on the ground that the plea was entered with the ineffective assistance of counsel" (footnotes and citations omitted)).

overtones."**40** We agree with our sister states that have held that because the constitutional prohibition on double jeopardy is " 'fundamental to the American scheme of justice[,]' . . . this right must be enforced whenever a violation is determined to exist."**41**

Our holding is in accord with a line of cases from the court of appeals dating back 32 years, which recognizes that unpreserved double-jeopardy claims may be brought for the first time on appeal.**42** Our opinion today confirms full reviewability

---

**40** *People v. Michael*, 394 N.E.2d 1134, 1136 (N.Y. App. 1979).

**41** *State v. Millanes*, 885 P.2d 106, 109 (Ariz. App. 1994); *see also State v. Johnson*, 483 So. 2d 420, 422 (Fla. 1986); *Dixon v. Commonwealth*, 263 S.W.3d 583, 593 n.50 (Ky. 2008); *Michael*, 394 N.E.2d at 1136 ("There exist certain narrowly drawn exceptions to the general rule that a timely objection or request is necessary to create a question of law reviewable by this court, for certain principles of law are deemed so fundamental to our criminal justice system that a claimed violation of those principles creates a question of law despite the failure to timely raise that claim in the courts below . . . ." (citation omitted)); *Ramirez v. State*, 36 S.W.3d 660, 666 (Tex. App. 2001) ("Ordinarily, this initial lapse in preservation would end our discussion," but "because of the fundamental nature of double jeopardy protections, a double jeopardy claim may be raised for the first time on appeal or for the first time on collateral attack."); *cf. also Ex parte Trawick*, 972 So. 2d 782, 783 (Ala. 2007) (stating that "because multiple punishments for the same offense constitute a sentence that exceeds the maximum allowed by law and an illegal sentence affects the trial court's jurisdiction," a person bringing a successive petition for post-conviction relief "is not barred from asserting in this successive . . . petition the violation of his double jeopardy rights" that was not raised in an earlier petition. (quoting *Ex parte Robey*, 920 So. 2d 1069, 1071-72 (Ala. 2004))).

**42** *See Ward v. State*, Mem. Op. & J. No. 5502, 2009 WL 2342014, at *2 n.18 (Alaska App., July 29, 2009); *Weaver v. State*, Mem. Op. & J. No. 4488, 2001 WL 1388901, at *5 (Alaska App., Nov. 7, 2001); *Haynes v. State*, Mem. Op. & J. No. 3818, 1998 WL 238563, at *2 n.2 (Alaska App., May 13, 1998) (recognizing that double-jeopardy claims requiring only legal determinations may be decided for the first time on
(continued...)

of unpreserved double-jeopardy claims on appeal and clarifies that this holding is rooted in the doctrine of fundamental error.[43]

---

[42](...continued)
appeal); *Harvey v. State*, Mem. Op. & J. No. 3489, 1996 WL 658501, at \*5 n.8 (Alaska App., Nov. 13, 1996); *Erickson v. State*, Mem. Op. & J. No. 3289, 1995 WL 17221317, at \*4 (Alaska App., Nov. 22, 1995); *Yearty v. State*, 805 P.2d 987, 993 (Alaska App. 1991); *Ellis v. State*, Mem. Op. & J. No. 1942, 1990 WL 10513294, at \*2 n.3 (Alaska App., Jan. 10, 1990); *Machado v. State*, 797 P.2d 677, 686 n.2 (Alaska App. 1990); *Newsome v. State*, 782 P.2d 689, 691 (Alaska App. 1989); *Clifton v. State*, 758 P.2d 1279, 1285 (Alaska App. 1988); *Horton v. State*, 758 P.2d 628, 632 (Alaska App. 1988); *Lemon v. State*, 654 P.2d 277, 280 (Alaska App. 1982); *Tookak v. State*, 648 P.2d 1018, 1022 (Alaska App. 1982).

[43]        We asked Johnson and the State to brief the additional question whether Alaska should adopt a futility doctrine that would preserve for full appellate review a claim of error that would have been futile to raise in the trial court due to directly controlling precedent.  At least seven of our sister states have adopted a futility exception to the general preservation rule, reasoning that none of the purposes behind the general preservation rule are served by requiring an objection to a trial court's action that is mandated by binding rules of law and that the law does not require futile acts.  *See, e.g.*, *State v. Goodyear*, 413 P.2d 566, 567-68 (Ariz. 1966); *People v. Sandoval*, 161 P.3d 1146, 1153 n.4 (Cal. 2007); *Commonwealth v. Mendes*, 974 N.E.2d 606, 611 (Mass. 2012); *People v. Fike*, 577 N.W.2d 903, 906 (Mich. App. 1998); *St. Pierre v. State*, 620 P.2d 1240, 1243 (Nev. 1980); *State v. Brown*, 644 A.2d 1082, 1084 (N.H. 1994); *Ex parte Hathorn*, 296 S.W.3d 570, 572 (Tex. Crim. App. 2009).  The United States Supreme Court rejected the futility exception to the general preservation rule in federal court in *Johnson v. United States*, 520 U.S. 461, 465-68 (1997), and *Bousley v. United States*, 523 U.S. 614, 623 (1998), *see generally* Brent E. Newton, *An Argument for Reviving the Actual Futility Exception to the Supreme Court's Procedural Default Doctrine*, 4 J. App. Prac. & Process 521, 543 (2002).  Because we hold that Johnson's double-jeopardy argument is subject to full appellate review under the doctrine of fundamental error, we do not address whether we should adopt a futility exception to the general preservation rule.

**B. Johnson Did Not Invite The Alleged Error He Raises On Appeal.**

The State argues that Johnson's double-jeopardy claim runs afoul of the invited error doctrine. The stakes are high when invited-error review is on the table, because "[w]hen an error is invited, an appellate court examines the error [only] to see if there is an 'exceptional situation' where reversal is necessary to preserve the integrity of the judicial process or to prevent a miscarriage of justice."[44] The State reasons that "Johnson arguably invited the very error he now complains of" when his attorney stated at sentencing that the superior court had *discretion* to merge the sexual assault counts but did not argue that the superior court *must* merge those counts.

We conclude that Johnson did not invite the error he now complains of on appeal. We have defined invited error as occurring "when a party urges a lower court to do something that [the party] later appeals as erroneous."[45] This case fails to satisfy the traditional requirement that the narrow scope of invited-error review applies only when "the court takes erroneous action at the *express request* of the defendant."[46] Here, Johnson never urged the superior court to refrain from merging the sexual assault counts but rather argued for merger. Without an invitation, there can be no invited error. Because of the harsh consequences of invited-error review, we decline to expand its scope to cases in which appellants fail to object or in which they identify a different legal basis for their arguments to the trial court than they raise in an appellate court.

---

[44] *Parson v. State, Dep't of Revenue, Alaska Hous. Fin. Corp.*, 189 P.3d 1032, 1038 (Alaska 2008).

[45] *Johnson v. State*, 224 P.3d 105, 108 n.11 (Alaska 2010).

[46] *Barrett v. State*, 772 P.2d 559, 568-69 n.10 (Alaska App. 1989) (emphasis added).

### C. Johnson's Double-Jeopardy Claims Fail On The Merits.

The Alaska Constitution, article I, section 9, provides, in pertinent part, "No person shall be put in jeopardy twice for the same offense." The federal Constitution has a similar provision in the Fifth Amendment (applicable to the states through the Fourteenth Amendment[47]) which states, in pertinent part, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb."[48]

The constitutional protection against double jeopardy conveys three distinct rights: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense."[49] This case implicates the third category.

Johnson claims that his conviction and punishment for two counts of sexual assault in the first degree for vaginally and orally penetrating S.S. fall afoul of the constitutional prohibitions on double jeopardy found in both the Alaska Constitution and the federal Constitution. We disagree.

#### 1. Johnson's double-jeopardy claim under the federal Constitution fails on the merits.

In cases of alleged multiple punishment for a single course of criminal conduct, the United States Supreme Court has interpreted the federal double-jeopardy

---

[47]   U.S. CONST. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."); *Benton v. Maryland*, 395 U.S. 784, 794 (1969) ("[W]e today find that the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment.").

[48]   U.S. CONST. amend. V.

[49]   *N. Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (citations omitted), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989).

clause to authorize courts to enforce the will of the legislature.[50]  Where the legislature intends to apportion its punishment for a single course of conduct across multiple crimes, the high court will find no double-jeopardy problem under the federal Constitution where there are multiple convictions.[51]  But where the legislature intended to punish only once despite the potential applicability of multiple statutes or counts, the high court will find a double-jeopardy violation under the federal Constitution if a defendant is convicted of multiple crimes or counts.[52]  Legislative intent is "dispositive" of the federal constitutional question.[53]

We conclude that Johnson's right under the federal Constitution to avoid double jeopardy was not infringed by separate conviction and punishment for separate counts of sexual assault in the first degree arising out of Johnson's single course of criminal conduct.  Nothing in the criminal statute or the legislative history indicates that the Alaska legislature intended to punish only once for a course of criminal conduct that involved non-consensual sexual penetration of multiple orifices on the victim's body.  Indeed, the definition of "sexual penetration" adopted by the legislature indicates the legislature's intent to punish each distinct type of sexual penetration individually: Alaska Statute 11.81.900(b)(60) defines "sexual penetration" as "genital intercourse, cunnilingus, fellatio, anal intercourse, or an intrusion, however slight, of an object or any part of a person's body into the genital or anal opening of another person's body."  Moreover, "in the years since" the court of appeals adopted the rule that multiple punishments could lie for multiple types of non-consensual sexual penetration, "the

---

[50]    *See, e.g.*, *Whalen v. United States*, 445 U.S. 684, 688-89 (1980).

[51]    *Id.*

[52]    *Id.*

[53]    *Id.* at 689.

Alaska Legislature has taken no action to indicate its disagreement with [that] . . . conclusion."[54]  In short, there are indications that the legislature intended to permit multiple punishment for multiple types of sexual penetration, and there is no contrary indication.  The intent of the Alaska legislature to permit multiple punishment for multiple types of non-consensual sexual penetration is dispositive of the double-jeopardy issue under the federal Constitution.

> **2.      Johnson's double-jeopardy claim under the Alaska Constitution fails on the merits.**
>
> > **a.      *Whitton* establishes the fundamental principles for determining whether a criminal course of conduct constitutes the "same offense" or "multiple offenses" for the purposes of all double-jeopardy claims under the Alaska Constitution.**

In *Whitton v. State*, we held that in order to determine whether multiple punishment violates the Alaska Constitution, a court must first look to the intent, conduct, and societal interests at stake in the multiple offenses (or multiple counts of a single offense) that were defined by the legislature.[55]  A court must then independently determine whether the differences among these purposes underlying the multiple offenses or counts are great enough that multiple punishments for the criminal conduct should lie.[56]

---

[54]      *Erickson v. State*, 950 P.2d 580, 587 (Alaska App. 1997).

[55]      479 P.2d 302, 312 (Alaska 1970).

[56]      *Id.*  We also rejected the federal test for multiplicity, set out in *Blockburger v. United States*, 284 U.S. 299 (1932), which states:  "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  *Id.* at 304 (rejected in

(continued...)

A brief exploration of our prior application of the *Whitton* test illustrates how *Whitton* established the fundamental principles for determining whether a criminal course of conduct constitutes the same offense or multiple offenses for purposes of all double-jeopardy claims under the Alaska Constitution, and why that same test continues to govern such cases today and applies in this case.

Soon after announcing the *Whitton* test, we noted that "we would indeed have difficulty in upholding" multiple charges of assault under the same statute for "every movement of a rifle barrel toward or away from a prospective victim,"[57] but we upheld a conviction for both burglary and larceny arising out of the same series of criminal actions because "the conduct punished as well as the societal interests protected by the two statutes differ sufficiently to permit consecutive punishment under both statutes."[58] We concluded in *Thessen v. State* that it would violate our double-jeopardy clause to permit multiple convictions on multiple counts of violating a single criminal prohibition where harm was caused to multiple victims through a single criminal act (in that case arson) without intent to harm multiple victims.[59] But in *State v. Dunlop*, we recognized that our ruling in *Thessen* was erroneous.[60] Our error in *Thessen* stemmed from recognizing that the defendant's intent and conduct were identical for each count of manslaughter but ignoring the difference in the consequences of each count — the death of a distinct person — as being one of the societal interests that the offense of

---

[56](...continued)
*Whitton*, 479 P.2d at 312).

[57]  *Mill v. State*, 585 P.2d 546, 552 n.4 (Alaska 1978).

[58]  *Mead v. State*, 489 P.2d 738, 740, 743 (Alaska 1971).

[59]  508 P.2d 1192, 1195 (Alaska 1973).

[60]  721 P.2d 604, 608-09 (Alaska 1986).

manslaughter was designed to guard against.[61] And in *Dunlop* we clarified that *Thessen* misapplied *Whitton*: When applying the *Whitton* test courts must consider not only the intent and conduct of the perpetrator but also the consequences of his actions, and that the "gravamen of the offense of manslaughter" is the death of a distinct person, not people in general, such that the sufficiently important differences in the identity of each victim justified multiple punishment under *Whitton*.[62] Our case law thus makes clear that *Whitton* is the sole test for multiple punishment of the same offense under the Alaska Constitution.[63]

The parties in this case purport to identify multiple tests for multiple punishment emanating from our case law and dispute which test should apply here. For the reasons described above, we hold that *Whitton* establishes the fundamental principles for determining whether a criminal course of conduct constitutes the same offense or

---

[61]    508 P.2d at 1195.

[62]    721 P.2d at 608-09.

[63]    In *Rofkar v. State*, 273 P.3d 1140 (Alaska 2012), we mischaracterized *Dunlop* as establishing a new test applicable in cases in which "one statute has been violated by a single course of conduct that results in multiple deaths or injuries," and we incorrectly asserted that the distinct *Whitton* test "would otherwise continue to apply" in other types of cases involving multiple statutory violations. *Id.* at 1143. It is clear from reading *Dunlop* and *Whitton* that they apply the same test — the *Whitton* test — and that the *Whitton* test applies equally well in cases of multiple statutes, multiple counts of violating a single statute, and multiple victims or lone victims. We do not read *Rofkar* as relying on any distinction between *Whitton* and *Dunlop*, and we disavow the dicta in *Rofkar* that indicates that different tests for multiple punishment apply in different contexts.

multiple offenses for purposes of all double-jeopardy claims of multiple charges, convictions, or punishments under the Alaska Constitution.[64]

> **b.** **Under *Whitton*, Johnson's non-consensual sexual penetration of S.S.'s vagina and mouth constitutes multiple offenses such that multiple punishment is not prohibited by the Alaska Constitution's prohibition on double jeopardy.**

Applying the test from *Whitton* to determine whether Johnson's conviction and punishment for two counts of sexual assault in the first degree were unconstitutionally multiple, we must: (1) identify the societal interests at stake in charging, convicting on, and punishing multiple counts of sexual assault in the first degree, including differences in Johnson's intent and conduct and the consequences of his actions; and (2) independently determine whether those societal interests are great

---

[64] The State argues that *Dunlop* should apply to the exclusion of *Whitton*, but as we explain above, *Dunlop* applied *Whitton*.

Johnson argues that neither *Dunlop* nor *Whitton* should apply in this case and that we should adopt another test for cases involving one perpetrator, one victim, and multiple counts of a single crime: whether there was a "sufficient break in time or circumstance" between the conduct leading to each count to sustain separate convictions. But *Whitton* establishes the fundamental test for whether criminal conduct constitutes the same offense or multiple offenses, and we decline to create a new test. We rejected a sufficient-break test in *Whitton* when we rejected a "same-transaction test" that would allow "only one punishment if a number of separate statutory violations arise out of a single criminal act or transaction." *Whitton v. State*, 479 P.2d 302, 307 (Alaska 1970). We continue to conclude that the criminal's intent and conduct, the consequences of his actions, and the societal interests implicated in permitting separate punishment are more relevant constitutional factors than a narrow focus on the time and location of a series of criminal acts, which ultimately would leave the boundaries between crimes in the hands of the criminal rather than the legislature and the courts. Although breaks in the time and circumstances between conduct leading to separate charges, conviction, and punishment may be relevant within the *Whitton* factors in some cases, *Whitton* continues to provide the sole test for multiple punishment under the Alaska Constitution.

enough that multiple punishments for the criminal conduct should lie or whether multiple punishment is unconstitutional.[65] We hold that Johnson's double-jeopardy right under the Alaska Constitution was not violated by multiple punishment for his multiple crimes.

The criminal prohibition on rape has as its goal preventing the loss of autonomy, dignity, free will, and bodily integrity that comes with non-consensual sexual penetration. We have stated that "[t]he reason [rape] is most serious is because it amounts to a desecration of the victim's person which is a vital part of her sanctity and dignity as a human being."[66] The United States Supreme Court has noted that "[rape] is highly reprehensible, both in a moral sense and in its almost total contempt for the personal integrity and autonomy of the . . . victim and for the latter's privilege of choosing those with whom intimate relationships are to be established. Short of homicide, it is the 'ultimate violation of self.' "[67]

These consequences of sexual assault are revisited upon the victim with each distinct type of non-consensual sexual penetration in the course of the criminal episode. In this case, for example, S.S. protested Johnson's command to perform fellatio before complying at knife point, but she raised a new, distinct protest to Johnson's command (again, at knife point) that she submit to vaginal intercourse. S.S. experienced a difference in the nature, not just the degree, of the harm she had already suffered and the additional harm Johnson sought to inflict.[68]

---

[65] *Whitton*, 479 P.2d at 312.

[66] *Newsom v. State*, 533 P.2d 904, 911 (Alaska 1975).

[67] *Coker v. Georgia*, 433 U.S. 584, 597 (1977).

[68] We do not imply that a victim must mount a distinct protest to each type of non-consensual sexual penetration in order to render separate conviction constitutionally permissible. The fact that S.S. did raise a distinct protest only illustrates what is true in

(continued...)

We hold that the harms from non-consensual sexual penetration of distinct orifices of the victim's body are so independently significant that multiple counts of sexual assault are permissible under the Alaska Constitution to vindicate the societal interest in preventing those harms and punishing the conduct that led to it.  Our sister states appear to be nearly unanimous in reaching the same conclusion.[69]  We agree with one of the leading cases in this area that "[r]epeated acts of forcible sexual intercourse are not to be construed as a roll of thunder — an echo of a single sound rebounding until attenuated.  One should not be allowed to take advantage of the fact that he has already committed one sexual assault on the victim and thereby be permitted to commit further assaults on the same person with no risk of further punishment for each assault

---

[68](...continued)
every case: each distinct type of non-consensual sexual penetration constitutes a distinct harm.

[69]     *See, e.g.*, *State v. Jackson*, 410 S.W.3d 204, 218 (Mo. App. 2013); *State v. Ware*, 372 N.E.2d 1367, 1368 (Ohio App. 1977), *aff'd*, 406 N.E.2d 1112 (Ohio 1980); *State v. Cates*, 632 N.W.2d 28, 33 (S.D. 2001); *State v. Phillips*, 924 S.W.2d 662, 665 (Tenn. 1996) ("Each act, in our opinion, is capable of producing its own attendant fear, humiliation, pain, and damage to the victim. . . . [A]n accused may be convicted of more than one offense when the rape involves separate acts of sexual penetration." (internal quotation marks omitted)); *State v. Tili*, 985 P.2d 365, 371 (Wash. 1999) ("Each penetration in this case clearly constitutes an independent unit of prosecution.  Each penetration was an independent violation of the victim's personal integrity."); *State v. Carter*, 282 S.E.2d 277, 280-81 (W. Va. 1981); *State v. Eisch*, 291 N.W.2d 800, 805 (Wis. 1980) ("Each of these methods of bodily intrusion is different in nature and character."); *Hamill v. State*, 602 P.2d 1212, 1216 (Wyo. 1979).  *But see Sanchez-Rengifo v. United States*, 815 A.2d 351 (D.C. 2002) (indicating in dicta that in at least some cases that court would be willing to depart from the consensus among the other states and hold that "repeated acts of forced sexual intercourse, if committed in a single course of conduct, will not be converted into separate rapes," *id.* at 356, but holding in the case before it that the multiple acts of rape could be separately charged, *id.* at 359).

committed."[70]  As the Wisconsin court of appeals recognized, "Each act is a further denigration of the victim's integrity and a further danger to the victim."[71]

## V.    CONCLUSION

For these reasons, we REVERSE the court of appeals' decision denying full appellate review on the merits of Johnson's double-jeopardy claims but AFFIRM the superior court's conviction and sentencing of Johnson for separate counts of sexual assault in the first degree as not violating the constitutional prohibitions on double jeopardy.

---

[70]    *Harrell v. State*, 277 N.W.2d 462, 469 (Wis. App. 1979).

[71]    *Id.*