**NOTICE**

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KYLE G. RUTHERFORD, | ) | |
| | ) | Supreme Court No. S-19234 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-23-04845 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| MELISSA E. RUTHERFORD, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 2119 – November 19, 2025 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Yvonne Lamoureux, Judge.

Appearances: Kyle Rutherford, pro se, Alvarado, Texas, Appellant. Melissa Rutherford, pro se, Bryan, Texas, Appellee.

Before: Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

## I.   INTRODUCTION

This appeal concerns orders made in connection with consolidated protective order, divorce, and custody proceedings. A man challenges the superior court's decision to award rehabilitative support to his ex-wife for three years while she seeks a college degree. He criticizes the superior court's visitation order and argues the

---

\* Entered under Alaska Appellate Rule 214.

court violated due process by denying him the opportunity to present witnesses at hearings. Seeing no merit in these arguments, we affirm the superior court's orders.

## II.    FACTS AND PROCEEDINGS

Kyle and Melissa Rutherford were married in 2014. They have three minor children.

Shortly after the birth of their third child in February 2023, Melissa petitioned for a short-term domestic violence protection order (DVPO) against Kyle. After an ex parte hearing, a magistrate judge granted it.

Melissa and the children moved from Alaska to Texas to live with her parents. Meanwhile, she filed a complaint in Alaska for divorce and child custody and also sought a long-term DVPO. The superior court consolidated the DVPO case with the divorce proceeding, scheduled a joint evidentiary hearing, and extended the short-term DVPO.

The court held the joint hearing on the DVPO and interim custody in April 2023. Melissa and Kyle were both represented by counsel. They both testified and were cross-examined. And they each called one additional witness to testify.

The court made a decision on the record and issued a written interim order regarding custody, spousal support, and attorney's fees. The court granted the long-term DVPO, finding that Melissa presented sufficient evidence that Kyle committed fourth-degree assault, and awarded her sole interim custody of the children. The superior court declined to order that the children return to Alaska but granted Kyle unsupervised visitation in Texas. It later issued an interim visitation schedule giving Kyle up to one month of visitation with the children in the summer. Finally, the court ordered Kyle to pay interim spousal support in the amount of $1,000 per month and $5,000 in interim attorney's fees.

In February 2024 the superior court held a two-day trial on property division and custody issues. In a subsequent written order, the court held that the parties would exercise joint legal custody over the children and awarded Melissa primary

physical custody. Noting that Kyle had recently moved to Texas, about two hours away from Melissa's residence, the court granted Kyle visitation every other weekend during the school year and alternating three-week periods during the summer, with alternating winter breaks and holidays.

The court also addressed the parties' finances. It found that the marital estate had a value of approximately $107,083 and divided it 55/45 in favor of Melissa. It then considered Melissa's motion for spousal support. The court found that Melissa had been a stay-at-home parent for the previous six years and had limited work history before that. It also found that she had started attending college full-time after the parties separated. Given Melissa's full-time school work and primary physical custody of the children, the court found that she did not have the ability to support herself financially and that the property division was insufficient to meet her needs. Therefore, the court found that rehabilitative support was warranted to allow Melissa to pursue a college degree. Noting that Kyle had earned well over $100,000 per year in recent years, it found he had the financial ability to support Melissa. Accordingly, the court ordered Kyle to pay Melissa $1,000 per month in rehabilitative support for three years, beginning September 2024.

Kyle appeals, representing himself.

## III. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion By Awarding Melissa Rehabilitative Support.

"Alaska has a policy of encouraging trial courts to provide for parties' financial needs by property disposition," rather than by spousal support.[1] But when the division of marital assets is inadequate to support the spouse with smaller earning

---

[1] *Dundas v. Dundas*, 362 P.3d 468, 480 (Alaska 2015) (quoting *Dixon v. Dixon*, 747 P.2d 1169, 1173 (Alaska 1987)) (internal quotation marks omitted).

capacity, the superior court may award spousal support for a limited period "to the extent it is 'just and necessary.' "[2]

There are two common types of spousal support: reorientation support and rehabilitative support.[3] Reorientation support "allows the requesting spouse an opportunity to adjust to the changed financial circumstances accompanying a divorce."[4] Rehabilitative support is appropriate when the recipient spouse intends to apply the support "toward job training designed to lead to employment."[5]

After trial the superior court determined that Melissa no longer needed the reorientation support that had been awarded in the April 2023 interim order. But it determined that three years of rehabilitative support was just and necessary to allow her to obtain a college degree so she could "advance in the work force."

Kyle challenges this ruling on two grounds.

First, Kyle suggests that the award was unjustified because the total duration of spousal support — the court's interim award of reorientation support plus its final award of rehabilitative support — will exceed 60% of the duration of the marriage. But he cites no legal authority indicating this period of time is inherently excessive, either in absolute terms or relative to the length of the marriage. Nor does he cite authority indicating that when two different types of support are awarded, we must evaluate the total duration of support for reasonableness. To the contrary, we have recognized that the two different types of support serve different goals and are not

---

**2** *Jones v. Jones*, 835 P.2d 1173, 1178-79 (Alaska 1992) (quoting former AS 25.24.160(a) (1991)); *see* AS 25.24.160(a)(2).

**3** *See Jones*, 835 P.2d at 1178-79.

**4** *Dundas*, 362 P.3d at 480 (alteration omitted) (quoting *Davila v. Davila*, 876 P.2d 1089, 1094 (Alaska 1994)).

**5** *Fernau v. Rowdon*, 42 P.3d 1047, 1058 (Alaska 2002) (quoting *Jones*, 835 P.2d at 1178-79).

"mutually exclusive."[6]  Because Kyle does not otherwise challenge the basis for the interim award of reorientation support, we focus solely on his challenge to the award of rehabilitative support in the court's final order.

Second, Kyle argues that the court provided "no rationale" for the award of rehabilitative support "beyond an apparent punitive intent."  And he asserts that the award is unjustified because Melissa could return to work more quickly as a cosmetologist, her profession before leaving the workforce, than by completing a bachelor's degree.  We do not find these arguments persuasive.

"A spouse seeking spousal support must present specific evidence establishing the need for that support, and the trial court must make specific findings regarding that spouse's financial needs," along with an explanation for its determination that the award was just and necessary.[7]  The court must also "enter findings on the higher-earning spouse's ability to pay spousal support."[8]  An award of spousal support is reviewed for abuse of discretion, which exists only if the award is "clearly unjust."[9]

The superior court's findings are sufficiently specific, and there is evidence supporting the findings.  By the time the couple separated, Melissa had been out of the workforce for over six years.  The court found that her cosmetology license had expired and would require approximately 600 hours of training to renew.  Testifying that cosmetologists tend to earn low wages, Melissa informed the court that she was enrolled in college to receive her bachelor's degree for a career as a clinical psychologist.  The superior court accepted Melissa's need to increase her income as the children's primary caregiver, took note of Kyle's high earnings, and determined he was

---

**6**     *Davila*, 876 P.2d at 1094.

**7**     *Hockema v. Hockema*, 403 P.3d 1080, 1089 (Alaska 2017).

**8**     *Id.* at 1089, 1092.

**9**     *Id.* at 1088 (quoting *Urban v. Urban*, 314 P.3d 513, 515 (Alaska 2013)).

able to pay Melissa $1,000 per month in rehabilitative support for three years — the time it will take Melissa to complete her degree.

Kyle fails to convince us that this award is clearly unjust. He asserts that Melissa could have easily renewed her cosmetologist's license. But even if the court had credited his testimony (and there is no indication it did), it was reasonable to conclude that support was just and necessary so that Melissa could "advance in the work force," given her modest income as a cosmetologist and the need to support three young children. Kyle also asserts that Melissa benefitted from a Pell Grant, but such grants are awarded to "students who display exceptional financial need" to offset education costs such as tuition, not to offset or replace other means of support.[10] He asserts that Melissa received awards of attorney's fees and costs in connection with the custody and protective order proceedings, as well as possession of a 401(k) plan. But the fees and costs awards pay for Melissa's attorney and litigation costs, not Melissa's personal expenses, and a 401(k) plan is for retirement, not near-term living expenses. Ultimately, Kyle fails to convince us that the court's spousal support award was clearly unjust. We therefore affirm this award.[11]

## B. The Superior Court Did Not Err In Its Visitation Order.

Kyle argues that the superior court erred by restricting his visitation rights, but his brief primarily describes allegations that Melissa restricted his ability to have contact with the children. To the extent that Kyle means to challenge the court's findings in support of its custody and visitation order, the incidents Kyle describes do

---

[10] *Federal Pell Grants*, FEDERAL STUDENT AID, https://studentaid.gov/understand-aid/types/grants/pell (last visited Oct. 23, 2025).

[11] Kyle also asks us to "[i]mpute an income to Melissa based on her ability to obtain a Texas cosmetology license" and for that income to "be reflected in any spousal or child support determinations." But Kyle did not indicate his intent to challenge the child support calculation in his points on appeal and did not brief an argument about child support. The issue of child support is waived, so we do not address it. *See A.H. v. W.P.*, 896 P.2d 240, 243-44 (Alaska 1995).

not undermine these findings.[12]  The court found that "[b]oth Melissa . . . and Kyle . . . have room for improvement in their co-parent communications regarding the children in order to best meet the children's needs."  It also found that "[b]oth parties recognize the importance of the other parent in the children's lives, but have challenges communicating with each other about the children."  Even if we credit Kyle's assertions about Melissa limiting his communications with the children, we see no clear error in the court's findings.

Kyle also asserts that his summer visitation with the children was "reduced from six weeks to one month."  This appears to be a reference to the custody investigation report, which recommended Kyle be granted a summer visitation period of six weeks should he continue to live far away from his children.  But the superior court, noting that Kyle had moved closer to the children in Texas, granted Kyle alternating three-week periods in the summer.  That pencils out to at least six weeks of visitation per summer.  Kyle does not otherwise assert that this arrangement amounts to an abuse of discretion, so we affirm the superior court's visitation order.

### C.     The Superior Court Did Not Violate Kyle's Due Process Rights.

Kyle argues that he was denied his right to due process in the two protective order hearings:  the ex parte hearing on February 7, 2023, and the consolidated interim custody/long-term protective order hearing on April 19, 2023.[13]  He asserts that the superior court "curtail[ed]" his "evidentiary presentation" and wrongfully denied him the opportunity to present witnesses.

---

[12]     To the extent that Kyle seeks to enforce provisions of the custody and visitation schedule, any request for enforcement should be directed to the superior court.

[13]     In his statement of issues presented for review, Kyle describes being limited to one witness at the February 7, 2023 hearing and denied all witnesses at the April 19, 2023 hearing. Because the February 7, 2023 hearing was ex parte, and Kyle did present a witness at the April 19, 2023 hearing, we presume that Kyle means to argue the reverse.

Kyle was not able to present witnesses at the February hearing because it was ex parte. The legislature has authorized courts to issue short-term protective orders on an emergency basis, after hearing only the petitioner's evidence.[14] Kyle presents no cogent argument why this procedure violates due process. The case Kyle cites in support of his due process argument, *B.J. v. J.D.*, does not address due process, nor did the appellant in that case advance any challenges related to ex parte proceedings or the admission of evidence.[15] Kyle otherwise articulates no grounds for a due process argument. Even self-represented litigants, to whom we apply more lenient standards, "must cite authority and provide a legal theory."[16] Therefore, his argument is waived.

At the April hearing Kyle was represented by counsel, testified on his own behalf, and called an additional witness. His counsel declined a clear opportunity to call additional witnesses to testify. Therefore, Kyle failed to preserve any argument that due process required the court to give him the opportunity to present additional witnesses.[17] And although unpreserved claims may be reviewed for plain error,[18] we see no obvious mistake here.

## IV. CONCLUSION

We AFFIRM the judgment of the superior court.

---

[14] AS 18.66.110(a).

[15] 950 P.2d 113 (Alaska 1997) (addressing jurisdiction, abuse of discretion in custody award, and error in denial of attorney's fees).

[16] *Wright v. Anding*, 390 P.3d 1162, 1169 (Alaska 2017).

[17] *Johnson v. State*, 328 P.3d 77, 82 (Alaska 2014) ("[A] litigant or defendant must raise an objection in the trial court in order to preserve that argument for appeal.").

[18] *Id.* "A plain error involves an 'obvious mistake' that is 'obviously prejudicial.'" *In re Hospitalization of Gabriel C.*, 324 P.3d 835, 838 (Alaska 2014) (citing *Adams v. State*, 261 P.3d 758, 770 (Alaska 2011); *State, Dep't. of Rev., Child Support Enf't Div. v. Mitchell*, 930 P.2d 1284, 1288 (Alaska 1997)).